The Board of Commissioners of Bartholomew Co. *v.* Bright.

THE BOARD OF COMMISSIONERS OF THE COUNTY OF BARTHOLOMEW *v.* BRIGHT.

Contracting with a corporation, as such, which is authorized by a general law, admits its existence, and a general denial admits the capacity of the corporation to sue.

It would seem, that municipal corporation bonds, payable to bearer, are commercial paper, and governed by the law merchant.

Section 6, of the act of *December* 31, 1849, local acts 1849, and '50, p. 39, legalized the stock subscribed by counties before its passage, and empowered the commissioners to issue bonds for its payment.

The same act restricted the railroad company therein named from selling its own bonds at a greater discount than ten per cent., but did not so restrict it in the sale of the bonds of others.

APPEAL from the *Bartholomew* Circuit Court.

PERKINS, J.—*Bright* sued the county of *Bartholomew* on bonds, of one of which we give a copy as a sample:

[No. 1.]

" $100.          STATE OF INDIANA, }
                 COUNTY OF BARTHOLOMEW. }

"Issued in pursuance of law, and an order of the Board of Commissioners, for stock in the *Columbus, Nashville, and Bloomington Railroad Company.*

"Be it known, that the county of *Bartholomew*, in the State of *Indiana*, for value received, owes to the *Columbus, Nashville and Bloomington Raiload Company*, the sum of 100 dollars of lawful money to be paid to the said *Columbus, Nashville and Bloomington Railroad Company*, or to the bearer, in ten years from this date, with interest thereon, at the rate of seven per centum per annum, out of the treasury of said county, without any relief whatever from valuation or appraisement laws, said interest to be paid annually by the treasurer of said county, on the first *Monday* in *March*, at the

Branch at *Madison* of the State Bank of *Indiana*, upon the presentation of the coupon for the same, hereunto attached, at which place the principal hereof will be paid when due, with the privilege to the bearer hereof of exchanging this bond to the whole amount which may be due thereon, at any time, for an equal amount of the capital stock in the *Columbus, Nashville and Bloomington Railroad Company*, at par, upon presentation thereof to the secretary of said railroad company. And for the payment of this bond, and interest thereon, in manner aforesaid, the faith of said county and its revenues, as well as two shares of the capital stock of said railroad company, and all dividends thereon, are hereby irrevocably pledged.

" In witness whereof the Board of Commissioners of the said county have caused these presents to be issued and signed, on their behalf, and on behalf of said county, by the undersigned, their agent and attorney for that purpose, duly appointed, and to be countersigned by the auditor, and sealed with the seal of the said county, this first day of *August*, A. D. 1850.                                N. T. HANSER, Agent.

"By order of the Board of Commissioners of the county of *Bartholomew*, the above bond is hereby [L. s.]    countersigned by me as Auditor of said county, and sealed with the seal of said county.

. "DAVID R. WAYLAND, Auditor."

The coupons are attached, the first of which we copy:

"No. 1.   Interest warrant.   On *March* 1st, 1851, the Treasurer of the county of *Bartholomew* will pay to the bearer 7 dollars, at the Branch at *Madison* of the State Bank of *Indiana*, for interest on bond No. 1, issued A. D. 1850.   For the Board of Commissioners.          N. T. HANSER, Agent."

The defendant answered in six paragraphs.

1. General denial.

2. In denial of the existence of the corporation.

3. The same.

4. That the Board of Commissioners authorized the taking of the stock twenty-three days before the law empowered them to subscribe it.

5. That "said plaintiff purchased said bonds at a greater deduction than ten per cent. upon the principal thereof."

6. That the assent of a majority of the voters of *Bartholomew* county was not obtained to the subscription of the stock.

A demurrer was sustained to the last five paragraphs of the answer; and that ruling presents the only question for our consideration.

The railroad corporation was authorized by a general constitutional law, of which the Court takes judicial notice. This being so, the contract with the corporation as such, admitted its existence; and, further, the general denial admitted the capacity of the plaintiff to sue. *Heaston* v. *The Cincinnati, &c., Co.*, 16 Ind. 275. The last three paragraphs, therefore, are all that require examination; but, before proceeding with it, we will notice, for a moment, another question much discussed by counsel, viz: the negotiability of municipal corporation bonds, drawn payable to bearer, though the pending cause does not call for its decision. Bills of exchange are commercial paper, that is to say, they, by international law, are governed by the law-merchant, the *lex mercatoria* being in fact a part of the law of nations. 1 Black. Comm. 273; 4 *id.* 67. The law of nations, including the *lex mercatoria*, is a part of the English common law. *Id.* The English common law is a part of the law of *Indiana*. 1 R. S. by G. & H. p. 415.

Whatever paper, then, is governed by the law-merchant, under the English common law, is governed by the law-merchant in *Indiana*, independent and in the absence of any special statute on the subject. It would seem that both foreign and inland bills of exchange are such paper. *Mix* v.

*The State Bank*, 13 Ind. 521. See *Snyder* v. *Oatman*, 16 Ind. 265. The weight of authority now seems to be that municipal corporation bonds, payable to bearer, are also such paper. See the cases collected by Professor Dwight in a note to *Cloud* v. *The Town of Kerling*, 1 Am. L. Reg. (N. S.) p. 290. See, in addition, *Society for Savings* v. *New London, ibid.* 242; also, *The Junction, &c., Co.* v. *Cleneay*, 13 Ind. 161. It would seem that the reason of the law, making bills of exchange commercial paper, applied in full force to the bonds of which we are speaking. They are issued as marketable securities. They are for the purpose of raising money, by transfer, in the monetary world, and should be governed by such principles as will tend to secure the confidence in them of the men of that world. We turn now to the paragraphs of the answer, requiring notice, and we begin with the fourth, which asserts that the Board of Commissioners prematurely subscribed.

It was competent, under the old Constitution, for the Legislature of *Indiana* to vest county boards with the power to subscribe, on behalf of their several counties, stock in public works. *The City of Aurora* v. *West*, 9 Ind. 74. In 1842, the Legislature turned over to private companies all the public works projected by the State; and by section 61, of the act making the transfer, authorized any county in the State to take stock in such companies. Acts of 1842, p. 1.

In 1849, the Legislature chartered the *Columbus, Nashville and Bloomington Company* to construct a branch of the *Madison Railroad*, one of those turned over by the State to a private company. Local acts of 1849, p. 306. That act made no provision on the subject of counties taking stock. But the county of *Bartholomew*, perhaps supposing the right existed under the act of 1842, did, by her commissioners, on the 8th day of *December*, 1849, subscribe stock in said company; and, on the 31st day of the same month, the Legislature enacted as follows:

The Board of Commissioners of Bartholomew Co. *v.* Bright.

"Sec. 6. It shall be lawful for said company to receive payment for stock from any railroad company, incorporation, county, or individual, in the bonds of such company, incorporation, county, or individual, in such form, and at such time of payment, and bearing such rate of interest as may be agreed on; and any railroad company, incorporation, or county, or the boards of commissioners of any such county, are hereby authorized to make and issue any such bonds for that purpose, for any stock taken, or to be hereafter taken in said company. And it shall be lawful for said railroad company, for the purpose of constructing the said road in this bill named, and for equipping and using the same, to make and issue their own bonds, in such form, and for such sum of money, and bearing such rate of interest, and to negotiate and dispose of the same, in such manner as the directors thereof shall deem for the best interests of the company; but no bonds shall be issued by said company for any other purpose whatever; and all such bonds shall be signed by the president, and attested by the secretary of the company, and sealed by their seal: *Provided,* That no such bond shall be issued for a less sum than 100 dollars; and *provided further,* that no such bond shall bear a higher rate of interest than ten per cent. per annum, nor be sold by said company at a greater deduction than ten per cent. upon its principal, and that it shall not hereafter be lawful for the Board of Commissioners of any county that has not subscribed for stock in said company, to subscribe for any such stock without first obtaining the assent of a majority of the voters of such county thereto, by a vote or petition, or otherwise: and *provided, also,* that the County Commissioners of the county of *Morgan* shall not be authorized to take any stock in said road." Local Acts of 1849–50, p. 39.

This section of the statute did these things among others:

1. It legalized the stock subscribed by counties before its

Vol. XVIII—7.

passage, and empowered the commissioners to issue bonds for its payment. *Davis* v. *The State Bank*, 7 Ind. 316.

2. It restrained the company from selling its own bonds at a greater discount than ten per cent., but did not so restrain it in the sale of the bonds of others.

3. It prohibited counties from subscribing stock after its passage without the consent of a majority of the voters, severally, of such counties.

The first of the foregoing propositions shows that the 4th paragraph of the answer was bad; and the first and third together show that the sixth paragraph was bad. See, in connection with this point, *The People* v. *Zeyst*, 23 N. Y. Court of App. 140; *Society for Savings* v. *The City of New London*, *supra*, and *Cloud* v. *The Town*, *&c.*, *supra*. The second of the foregoing propositions shows that the fifth paragraph of the answer was bad.

As a general proposition, the owner of property has a right to sell it according to the dictates of his own judgment. *Frank* v. *Peters*, 9 Ind. 343; *McTaggart* v. *Rose*, 14 *id.* 230. This proposition must be applicable to corporations, acting within the general scope of their powers. But corporations may be restricted in this right, as well as others, by the terms of their charter. In this case, the charter restricts the corporation only in the exercise of the right of sale of its own bonds. This is plain from the language itself, of the section quoted, which is the only one containing restrictions on the power of sale; and we do not think it is for the Court to add to them. If, by a fair construction of the restriction contained in the charter, it could be made to apply to all bonds, it would be the duty of the Court to apply it; but the restriction does not admit of such construction. It is explicit.

We may further remark, that the paragraph of the answer in question is probably bad, is certainly liable to a motion to be made more special, on account of its failure to state facts.

It asserts a conclusion. It should have stated what rate of discount the bonds were purchased at, or given other dates from which the Court, by calculation, could have ascertained that rate.

*Per Curiam.*—The judgment below is affirmed with 5 per cent. damages and costs.

*S. Stansifer* and *D. McDonald*, for the appellant.

*M. G. Bright*, for the appellee.