## MUSSELMAN *v.* McELHENNY.

NEGOTIABLE NOTE.—A negotiable note at common law is one payable to order or bearer; and such note as to defenses may have a *bona fide* holder, who has honestly received it for a consideration, ignorant of any vice in its original execution, and against whom such vice can not be set up as a defense on the note.

SAME—IN INDIANA.—In *Indiana* all notes negotiable at common law, and many others, are negotiable so far as to be transferable, and suable by the holders; yet they have not the other qualities of a negotiable note at common law, and, as to defenses, can not have a *bona fide* holder, unless they are drawn payable at a bank in the state.

SAME—ESTOPPEL.—Notwithstanding the maker of a note, not payable at bank, could not be prevented by the law-merchant from setting up defenses against a *bona fide* holder of it, he might, by his own acts, if of such a character and so performed as to induce another to pursue and justify him, as a man of ordinary prudence, in pursuing a given course of conduct, estop himself to deny the existence of the facts, on the belief of which, induced as above, such a course of conduct was adopted.

USURY.—Since 1853 usury does not subject to penalties or forfeitures.

SAME.—If usurious interest is taken out in advance, it makes a case of a want of consideration, in a note covering the amount to the extent of such interest.

SAME.—If usurious interest is paid on a note after execution, it amounts to a payment of so much on the principal of the note; and if the amount thus paid exceeds the principal, it may be recovered back.

SAME.—A promise made in a note to pay usurious interest in future, is a promise, to that extent, without consideration.

NOTE—SALE OF.—Maker of a note, not governed by the law-merchant, can not sell the same for a sum less than that expressed on its face, so as to preclude himself from setting up want of consideration to the extent of the discount, except possibly in case of estoppel, where sale was by agent.

SAME.—*A* borrowed of *B* $400, and gave his note for $500, with interest, payable to bearer, and told *B* he would give a mortgage to any holder of the note. On the same or the following day *B* offered to sell the note to *C,* who lived in the same town. *C* agreed to buy it if a mortgage was executed to secure it. *B* procured a mortgage from *A* to *C* to secure the note. There was no communication between *A* and *C; C* did not inquire about the consideration of the note, and no one spoke to him about it.

*Held,* that *A* was not estopped by the mortgage from pleading failure of consideration as to $100 of the note against *C.*

APPEAL from the *Miami* Common Pleas.

PERKINS, J.—Suit upon a note and mortgage. The

note is dated *November* 15, 1855, and the mortage *November* 17, 1855.   The following is a copy of the note:

" $500.                    *Logansport, November* 15, 1855.

" One year after date, I promise to pay to the bearer of this note five hundred dollars, for value received, with interest, and without any relief whatever from valuation or appraisement laws.          SAMUEL MCELHENNY."

It is necessary in the cause, and may as well be done at this point, that we declare the exact character of the above-copied note.   It is a negotiable promissory note, and at common law might, as to defenses against the same, have a *bona fide* holder.   A negotiable note at common law is one payable to order or bearer; that is to say, one whose terms authorize its transfer to another person than the one to whom it is originally executed: and such note, as to defenses, may have a *bona fide* holder; that is, a holder who has honestly received it for a consideration, ignorant of any vice in its original execution, and against whom such vice can not be set up as a defense to a suit upon the note.   It is this class of notes that elementary writers refer to when they speak of negotiable notes.   2 Par. on Notes and Bills, 426; 2 Par. on Cont. 422, *et seq.*

In *Indiana*, though all those notes which were negotiable at common law, and many others, are negotiable so far as to be transferable and suable by the holder, yet they have not the other qualities of a negotiable note at common law, and can not, as to defenses, have a *bona fide* holder; this incident not attaching to them unless they are payable at a bank in this state. The common law privileges of negotiable notes are confined, in this state, by statute, to that portion of such notes as are drawn payable at a bank in the state. *Snyder* v. *Oatman, et al.,* 16 Ind. 265.   See *The City, etc.* v. *West,* 22 Ind. 88.   But, notwithstanding the maker of the note in question could not be prevented by the law-

merchant from setting up defenses against a *bona fide* holder of it, still, there is another doctrine which might have that effect; to-wit: the doctrine of estoppel. A party may, by his own act, of such a character and so performed as to induce another to pursue and justify him, as a man of ordinary prudence, in pursuing a given course of conduct, estop himself to deny the existence of the facts, on the belief of the existence of which, induced as above, such course of conduct was adopted. *Ray* v. *McMurty*, 20 Ind. 307; *Windle* v. *Canaday, et al.*, 21 Ind. 248; *Pepper, et al.* v. *The State*, 22 Ind. 399 and 419. See, also, *Id.* 506, *et seq.*, in the note to *Aurora* v. *West, et al.* In this case the defenses of usury, want of consideration, and payment, were set up to the whole or part of the cause of action in the complaint mentioned; and, on the trial, the defendant had judgment in his favor. And here we may note the character of our present usury law. It is almost entirely changed from what it was in the past. Down to 1853 it was a penal law. It is such no longer. Usury no longer subjects to penalties or forfeitures. *Wood* v. *Kennedy*, 19 Ind. 68.

1. If usurious interest is taken out in advance, then it makes a case of want of consideration, in a note covering the amount, to the extent of such interest; and if the note be drawn with interest from date, in an amount covering interest taken out in advance, then there is a want of consideration for the note to the whole amount thus taken out of the sum nominally loaned, or added to the amount of the note, if that course is taken, beyond what is actually paid to the maker, or is actually due from him, with the accruing interest on such excess, because the legal interest is provided for and runs upon the note by its terms.

2. If usurious interest is paid on the note after its execution, it amounts to a payment of so much on the principal of the note; and if the amount thus paid exceeds the principal, it may be recovered back.

3. If the promise is made in the note to pay usurious interest in the future, it is a promise to that extent, without consideration; and so, if the promise is contained in a verbal promise to pay interest, for such a promise is not within the statute of frauds. *Wood* v. *Kennedy, supra.*

Another proposition may be here stated; viz: that while a man may sell for what he pleases notes he may own, executed by third persons, he can not sell, for cash, either himself or by agent, his own note—that is, a note of which he is maker, especially if the note is not one governed by the law-merchant—for a price less than that expressed on its face, and by such sale preclude himself from setting up want of consideration to the extent of the discount, unless perhaps, where the sale was by agent, a possible case of estoppel might be created. See Par. on Notes and Bills, *supra.* Selling one's own note is giving one's own note for the consideration received on the sale.

In the case at bar, *McElhenny* received $400, and no more, as the consideration of the note. About this fact there is no dispute, and that sum, with interest, is all that *Musselman*, the holder, can recover, unless there is an estoppel in the case. Is there such? We do not inquire whether an estoppel was so pleaded that evidence of it was properly admissible on the trial, but whether the evidence shows one to have existed. We shall state the case upon the plaintiff's, the appellant's, hypothesis, as alleged in his complaint, and proved by his evidence. It is this, in short: *McElhenny*, a citizen of *Logansport*, borrowed of one *Haney*, on the 15th of *November*, 1855, $400, and gave his note for $500, with interest. *McElhenny* told him he would give a mortgage to any holder to secure the note. On the same or the following day, *Haney* offered to sell the note to *Musselman*, also a citizen of *Logansport*. *Musselman* agreed to buy it if a mortgage was executed to secure it. *Haney* went to *McElhenny* and obtained the mortgage in this suit, drawn in the usual form to *Musselman*, to secure the note in question. *Musselman* never in-

quired a word about the consideration of the note; nobody said a word to him about it; there was no communication between him and *McElhenny* whatever, but *Musselman* claims that the execution of the mortgage amounted to an estoppel. We can not think so. *Haney* has a note on *McElhenny*. On the very day of its date, or the day following, he offers the note to *Musselman* for sale. On the next day, *Haney* calls on *McElhenny* for a mortgage to *Musselman*, and without saying any thing further, so far as appears, as to his transaction with *Musselman*, obtains the mortgage, and delivers it to *Musselman*. Now, certainly, as *Musselman* did not call on *McElhenny*, the latter would have a right to presume that *Musselman* had ascertained from *Haney* all about the note and its consideration; no ordinarily prudent man would have purchased the note without; and, hence, *McElhenny* could not have supposed that *Musselman* could receive the mortgage otherwise than as based upon a consideration coextensive with that of the note it was to secure. *Musselman* had all the means of obtaining accurate knowledge. We think it clear that *McElhenny's* act in executing the mortgage, as it was done in this case, amounted to no representation of an obligation to pay beyond what the consideration of the note might be—no representation on which a man of ordinary prudence could have been supposed to rely beyond that. The case lacks one of the necessary elements of estoppel; viz: a state of facts showing a right in *Musselman* to rely, in his action, on any false statement of *McElhenny*. *Piper* v. *Gillmore*, 49 Maine, 149; *S. C.* Boston Law Reporter, September, 1864, p. 649, is strongly in point.

*Per Curiam.*—Judgment affirmed, with costs.

*Daniel D. Pratt* and *Daniel P. Baldwin*, for appellant.

*E. Walker*, for appellee.