Parkinson *v.* Finch.

---

## PARKINSON *v.* FINCH.

PROMISSORY NOTE.—*Payable in Bank.*—The common law privileges of negotiable notes are confined in this State to such notes as are drawn payable at a bank in this State having an actual existence at the time the note is executed; and the name of such bank must be given in the note.

SAME.—*Fictitious Bank.*—A person who signs a note purporting to be negotiable and payable at a bank in this State, in an action brought by a *bona fide* holder, is not estopped from showing that there was no such bank as the one described in the note.

From the St. Joseph Common Pleas.

*L. Hubbard,* for appellant.

*A. Anderson,* for appellee.

BUSKIRK, J.—The record shows the following state of facts: That on the 1st day of October, 1869, the appellant executed and delivered to A. P. Jackson his note, payable in six months, for the sum of one hundred and twenty-five dollars, for and in consideration of the sale and conveyance by the said Jackson of the right to vend and use a patented roofing composition in one township in Wells county, Indiana, and two barrels of such composition. The note was upon its face and by its terms negotiable and payable at the First National Bank of Bluffton, with ten per cent. interest. The maker resided in Wells county, and the payee in St. Joseph county, Indiana. The payee indorsed and delivered such note to the appellee, in good faith and for a valuable consideration, before maturity. The appellee purchased the note, believing it to be commercial paper, and without any knowledge as to the consideration of the note, and seeing that it purported to be payable at a national bank, he took it without inquiry except as to the solvency of the maker. The action was against the maker and indorser. Process was served upon Jackson, the payee and indorser, in St. Joseph county, and he, failing to appear, was defaulted and judgment was rendered against him, and the cause, as to the maker of the note, was continued. At a subsequent term, the appellant appeared and filed an answer consisting of three paragraphs. The first and second were under oath. The answer was as follows:

" Par. 1. The defendant, Ebenezer Parkinson, for answer to the plaintiff's complaint, says that he did not execute the note therein mentioned.

" Par. 2. And for a further and second answer, defendant,

Ebenezer Parkinson, says that at the time of the execution of the note in plaintiff's complaint mentioned, there was not, nor has there been since, a First National Bank at Bluffton, Wells county, Indiana.  He further says that at the time of the commencement of this suit and the issue and service of summons therein, this defendant, Ebenezer Parkinson, was, and ever since hath been, and still is, a resident of, and permanently residing in, the county of Wells, State of Indiana, and that he was not, at the commencement of this suit or at any time before or since, a resident of St. Joseph county, in said State; wherefore he says that, as to this defendant, this court has no jurisdiction.

"Par. 3.   And for a further and third ground of defence to plaintiff's action, defendant Parkinson says that the note sued on in this case was given for a pretended conveyance or assignment of what Andrew P. Jackson represented to defendant Parkinson to be a good and valid assignment of the patented right to Jackson and Pratt's and A. P. Jackson's vulcanized fire proof roofing composition; and for the further consideration that Andrew P. Jackson promised and undertook to deliver to defendant Parkinson one barrel of the prepared composition for such roofing; that said Jackson and his agents falsely and fraudulently represented that said assignment would convey to said Parkinson a full and complete right to use and sell and assign said pretended patent in the township of Harrison, in Wells county, State of Indiana; a copy of which conveyance is filed herewith, marked 'A.'  Defendant Parkinson further says that said Jackson and Pratt, nor Andrew P. Jackson, had at the time of sale no patent right of, nor any right to vend any such patent as, Jackson and Pratt's and A. P. Jackson's vulcanized fire proof roofing composition, nor does said pretended conveyance give to said Parkinson any right to any patent whatever, but is absolutely void; and defendant further says that A. P. Jackson wholly failed and neglected to deliver to defendant one barrel of the prepared composition aforesaid, as by him promised and undertaken; wherefore defendant

Parkinson says that the consideration of said note sued on has wholly failed; and defendant Parkinson says that said note is not made payable at a bank in the State of Indiana; that at the date of the execution of said note, there was not, and ever since there has been no such bank as the First National Bank of Bluffton, Indiana."

The plaintiff filed the following reply:

"The plaintiff, for reply to the answer of the defendant Parkinson, says that the maker and payee of said note intended and contracted to make said note payable in a bank in the State of Indiana; that they intended and contracted to make said note payable at a bank in Bluffton, Indiana; that the defendant was and is a resident of Wells county, and knew that there was a bank at Bluffton. But the plaintiff at that time, and for a long time prior thereto, resided in St. Joseph county, Indiana, and knew nothing of the banks at Bluffton, Wells county; that the maker of said note sent said note so executed by him forth, the same purporting to be, and is upon its face, payable at a bank in the State of Indiana; and plaintiff says that he had no knowledge otherwise; that he relied on that act of the maker of said note, the defendant Parkinson, in giving said note the semblance of commercial paper; that in full reliance of such act of the maker, he purchased said note in good faith, paid a valuable consideration for the same, to wit, by conveyance of certain real estate in St. Joseph county, Indiana, before the said note became due, and without notice of any defence thereto; wherefore plaintiff says that defendant Parkinson is and ought to be estopped from denying that said note is payable at a bank in the State of Indiana. 2. And for a further and second ground of reply, plaintiff avers that he denies all the facts set forth in the defendant's answer."

A demurrer was overruled to the reply, and an exception taken by appellant.

The cause was submitted to the court for trial, and resulted in a finding for the plaintiff. A motion for a new trial was overruled, and final judgment was rendered on the finding.

The only valid assignment of error, and the only one dis-
cussed by counsel, is based upon the action of the court in
overruling the demurrer to the reply.

The position assumed by counsel for appellee is, that the
facts stated in the reply estopped the appellant from assert-
ing that the note was not payable in a bank in this State;
and this position is controverted by counsel for appellant.

The real question for our decision is, whether a person
who signs a note purporting to be negotiable and payable in
a bank of this State is thereby estopped, in an action brought
by a *bona fide* purchaser for value and before maturity,
from asserting and proving that there was no such bank as
the one described in the note.

It is provided by the sixth section of an act concerning
promissory notes, bills of exchange, etc., 2 G. & H. 658, that
"notes payable to order or bearer, in a bank in this State, shall
be negotiable as inland bills of exchange, and the payees
and indorsees thereof may recover as in case of such bills."

We think it is obvious from the plain and unambiguous
language of the statute, and from the numerous decisions
of this court placing a construction upon the above section,
that the common law privileges of negotiable notes are con-
fined, in this State, to such notes as are drawn payable at or
in a bank in this State, and that this presupposes that the
bank in or at which the note is payable shall have an actual
existence at the time the note is executed. *Davis* v. *McAl-
pine,* 10 Ind. 137; *Hubler* v. *Pullen,* 12 Ind. 567; *Mix* v. *The
State Bank,* 13 Ind. 521; *Hunt* v. *Standart,* 15 Ind. 33; *Hunt* v.
*Standart,* 15 Ind. 160; *Snyder* v. *Oatman,* 16 Ind. 265; *The
Board, etc.,* v. *Bright,* 18 Ind. 93; *Gordon* v. *Montgomery,* 19
Ind. 110; *Musselman* v. *McElhenny,* 23 Ind. 4; *State* v. *Murphy,*
23 Ind. 48; *Hereth* v. *The Merchants' National Bank,* 34
Ind. 380; *Stoneman* v. *Pyle,* 35 Ind. 103; *Hoffman* v. *Zollin-
ger,* 39 Ind. 461.

In *Davis* v. *McAlpine, supra,* the note was payable at a
private bank, and the question was, whether it was governed
by the law merchant. The court quote the above section

of the statute.    It is there shown that, under the statute of 1843, notes were governed by the law merchant when they were payable at a chartered bank.    The court there say : "We think a note payable at a bank is, in legal contemplation, payable in the bank ; and that a note payable at or in a bank is, in such contemplation, payable to the holder, or his agent, in the bank, at its counter."

It was further held, that it was not necessary under the above section that it should be a chartered bank, or a bank of issue, but that it would be sufficient if it was payable at a private bank of deposit or discount.    There are three kinds of banks, viz., banks of deposit, banks of deposit and discount, and banks of deposit, discount, and circulation.    Notes payable in either of these kinds of banks within this State would be governed by the law merchant.

In *Hunt* v. *Standart, supra*, this language is used: "In this State, promissory notes payable in a bank in this State, only, are placed upon the footing of bills of exchange, and governed by the law merchant."

In *Gordon* v. *Montgomery, supra*, the note was payable and negotiable at the office of the Ohio Insurance Company, in New Albany, and the question was, whether it was governed by the law merchant.    The court say: "This note was payable at a bank.    Of this fact the court takes judicial notice, because the Ohio Insurance Company is made a bank of discount and deposit, by a public law.    Local Laws, 1849, p. 439.    See *Davis* v. *McAlpine*, 10 Ind. 137."

In *Mix* v. *The State Bank, supra*, the note was executed in this State, but was payable at the American Exchange Bank, New York city, and the question was whether it was governed by the law merchant, and it was held that it was not, for the reason that by the statute of this State only notes that were payable at a bank within this State were governed by the law merchant.

In *Snyder* v. *Oatman, supra*, it was held that notes payable to order, but not in a bank in this State, though nego-

tiable, are not governed by the law merchant as to diligence against makers and rights of defence.

In *Musselman* v. *McElhenny, supra,* it was said: "A negotiable note at common law is one payable to order or bearer; that is to say, one whose terms authorize its transfer to another person than the one to whom it is originally executed: and such note, as to defences, may have a *bona fide* holder; that is, a holder who has honestly received it for a consideration, ignorant of any vice in its original execution, and against whom such vice cannot be set up as a defence to a suit upon the note. It is this class of notes that elementary writers refer to when they speak of negotiable notes. 2 Pars. Notes & Bills, 426; 2 Pars. Con., 422, *et seq.*

"In Indiana, though all those notes which were negotiable at common law, and many others, are negotiable so far as to be transferable and suable by the holder, yet they have not the other qualities of a negotiable note at common law, and cannot, as to defences, have a *bona fide* holder; this incident not attaching to them unless they are payable at a bank in this State. The common law privileges of negotiable notes are confined, in this State, by statute, to that portion of such notes as are drawn payable at a bank in this State."

In *Hereth* v. *The Merchants' National Bank, supra,* it was said, that "it is expressly provided by statute that promissory notes made payable to order or bearer, in a bank, in this State, shall be negotiable as inland bills of exchange."

In *Stoneman* v. *Pyle, supra,* the law was stated thus: "But as the note was payable at a bank in this State, it is governed by the law merchant, and the holder thereof is entitled to all the rights of a holder of commercial paper, unless the clause in the note stipulating for the payment of attorney's fees, in case suit should be commenced thereon, takes it out of that class of paper."

In *Hoffman* v. *Zollinger, supra,* it was said: "By our statute, a promissory note not payable in a bank in this State may be transferred by indorsement, but such transfer cannot

defeat a set-off which the maker may have acquired against the payee or any assignor before notice of the assignment."

It will be seen from the above quotations that the uniform language of this court has been that only notes payable in a bank in this State are governed by the law merchant. In *Gordon* v. *Montgomery, supra,* the note was held to be commercial paper, because the Ohio Insurance Company had been invested by public law with the rights and privileges of a bank of deposit and discount. The judgment in that case proceeded on the theory that the Ohio Insurance Company was, in fact, a bank in this State.

But in *Mix* v. *The State Bank, supra,* the note was held not to be governed by the law merchant, because the bank at which it was payable was not, in fact, a bank in this State.

As we have seen, the rule as it existed by the law merchant was, that a note payable to order or bearer, without being payable at a bank, was commercial paper. From the erection of the old state bank until the session of 1851 and 1852, only notes payable at a chartered bank were governed by the law merchant in this State. During that session, the legislature, under the power vested in it by the new constitution, created the Bank of the State, with branches, and free banks. Private banks had grown in public favor, and were regarded as necessary in the transaction of the growing commercial interests of the State. The legislature, therefore, in providing what notes should be governed by the law merchant, omitted the word "chartered," and provided that notes payable in a bank in this State should be negotiable as inland bills of exchange, and that the payees and indorsees thereof might recover as in case of such bills. As we have seen, this section has been construed to embrace any and all banks in the State, whether banks of deposit, banks of deposit and discount, or banks of deposit, discount, and circulation. The law, as it existed prior to 1852, was no longer applicable to the new condition of things, and was deemed

to be too limited to be commensurate with the demands of
trade and commerce.   The rule, as it existed under the law
merchant, was regarded as too broad and not adapted to a
comparatively new State.   It was, therefore, determined to
extend the privilege to all banks in the State, but it was
restricted to banks.

In *Gillaspie* v. *Kelley*, 41 Ind. 158, it is said:   "The bank
in which a promissory note is payable should be named in
the. note, so that the maker can know where he can pay the
same upon maturity, and that a demand may be made when-
ever such demand is necessary.   Edwards Bills, 157.   The
note in the case in judgment, when it was signed by the
maker, and by him delivered to the payee, did not contain
the name of the bank where it was payable, and conse-
quently was not governed by the law merchant."

There does not seem to be any room to doubt that the
legislature intended that the bank in which the note is made
payable shall have an actual existence in the State.   This is
apparent from the ruling in the case of *Gordon* v. *Montgom-
ery, supra*, where the note sued on was held to be commer-
cial paper, because the Ohio Insurance Company had been
invested by law with the powers and privileges of a bank of
deposit and discount; and the principle is further illustrated
by the case of *Mix* v. *The State Bank, supra*, where it was held
that the indorsers were not liable, because there had been no
demand of payment and protest for non-payment, the note
not being payable at a bank in this State, but a bank out of
the State.   If the bank must have an actual existence, then
the making of a note payable at a fictitious bank in this
State cannot give the note the character and immunity of
commercial paper.   Public policy forbids judicial recognition
of such a practice.   When a note is made payable at a bank
that has an actual existence, the maker knows where to go
to pay it at maturity, or he may provide for its payment by
draft; but if the bank at which the note purports to be pay-
able has no existence, the maker cannot provide for its pay-
ment, and may be sued on it and subjected to the payment

of costs and attorney's fees. But this would not be the worst consequence which would result from the recognition of fictitious banks. Suppose that A. makes his note payable to the order of B. at a fictitious bank, the name and location of which are given in the note. C. and D. become accommodation indorsers. The note purports upon its face to be commercial paper. A. and B. are insolvent, but C. and D. are responsible. The note thus made and indorsed is negotiated by B. to E. before maturity and for value. E. becomes the holder of the note in reliance upon the solvency of C. and D., the indorsers. A. is liable without a demand of payment at the place named in the note, but to charge the indorsers, there must be a demand of payment at the place named in the note. If the bank named is fictitious, and has no existence, there can be no demand of payment, and consequently C. and D. who are only secondarily liable, are discharged from all liability. In this way, a note which purports to be commercial paper, and is apparently well secured by the indorsers, might be put in circulation, when the indorsers could not be charged and held liable. The judicial sanction of such a doctrine would unsettle the law, and destroy the confidence of the commercial and business world in commercial paper. Nothing is so essential to the prosperity of a community as full and entire confidence in the validity and immunity of commercial paper. When it is known that a note cannot be governed by the law merchant, unless it is made payable in a bank in the State, which has an actual existence, such confidence will exist, because the existence of the bank can generally be ascertained; and if it cannot be, the purchaser takes it at his peril. We hold, that to make a note payable to order or bearer, in a bank in this State, negotiable as inland bills of exchange, it must be payable in a bank in this State which has an actual existence at the time the note is executed, and that the name of such bank must be given in the note.

But it is insisted by counsel for appellee that the appellant is estopped from asserting that there was no such bank as the one at which the note purported to be payable, and from denying the negotiable character of the note.    The case of *Walker* v. *Ebert*, 29 Wis. 194, is much in point.    In that case, the question was, whether a note to which the maker's signature had been procured by false representations as to the character of the paper itself, he being ignorant of its true character, and having no intention to sign such a paper, and being guilty of no negligence in doing so, is void even in the hands of a holder for value, before maturity and without notice; and it was held that the note was void.    The court say:   " The reasoning of the above case is entirely satisfactory and conclusive upon this point.    The inquiry in such cases goes back of all questions of negotiability, or of the transfer of the supposed paper to a purchaser for value, before maturity and without notice.    It challenges the origin, or existence of the paper itself; and the proposition is to show that it is not in law or in fact what it purports to be, namely, the promissory note of the supposed maker.    For the purpose of setting on foot or pursuing this inquiry, it is immaterial that the supposed instrument is negotiable in form, or that it may have passed into the hands of a *bona fide* holder for value.    Negotiability in such cases presupposes the existence of the instrument as having been made by the party whose name is subscribed; for, until it has been so made and has such actual legal existence, it is absurd to talk about a negotiation, or transfer, or *bona fide* holder of it, within the meaning of the law merchant.    That which, in contemplation of law, never existed as a negotiable instrument, cannot be held to be such; and to say that it is, and has the qualities of negotiability, because it assumes the form of that kind of paper, and thus to shut out all inquiry into its existence, or whether it is really and truly what it purports to be, is *petitio principii*—begging the question altogether.    It is, to use a homely phrase, putting the cart before the horse, and reversing the true order of reasoning;

or rather preventing all correct reasoning and investigation, by assuming the truth of the conclusion, and so precluding any inquiry into the antecedent fact or premise, which is the first point to be inquired of and ascertained."

In the present case, the note in suit is valid as an ordinary non-negotiable promissory note, but it is not negotiable as an inland bill of exchange, for the reason that it lacks the indispensable prerequisite, that it should have been payable in a bank in this State, which was in existence at the date of the note.

The court erred in overruling the demurrer to the affirmative paragraph of the reply.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to sustain the demurrer to such paragraph of the reply, and for further proceedings in accordance with this opinion.