[No. 15558.  *En Banc.*  June 22, 1920.]

# E. D. CUDDY (*Vera M. Cuddy substituted*), *Respondent,* v. C. K. STURTEVANT *et al., Appellants,* THE CITY OF CENTRALIA *et al., Defendants.*[1]

USURY (13)—EQUITY (39)—RELIEF—CONDITION PRECEDENT.  A party seeking equitable relief from an usurious contract must at least offer to return what he has received.

USURY (3)—MUNICIPAL BONDS—STATUTES.  Municipal bonds sold at a discount which would result in greater interest than six per cent, in violation of Rem. Code, § 8008, are not therefore usurious; since the usuary statute, id. §§ 6250-6256, permits eight per cent interest on such bonds, and fixes penalties only in case of interest exceeding that "hereinbefore" provided for.

MUNICIPAL CORPORATIONS (525)—BONDS—SALE AT DISCOUNT.  The sale of municipal bonds at a discount resulting in greater interest than allowed by law is an irregularity merely, and does not effect the power to make and issue the bonds.

SAME (525)—BONDS—SALE AT DISCOUNT—RECITALS—ESTOPPEL—RIGHTS OF BONA FIDE PURCHASERS.  Recitals in municipal bonds, payable to bearer out of a special fund, that every condition precedent to their issuance has been performed, work an estoppel in favor of bona fide purchasers in the open market, who are not required to consult the records to determine whether they were originally sold at a discount resulting in a greater rate of interest than allowed by law.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered June 16, 1919, adjudging the validity of certain municipal water bonds, in an action for an injunction.  Reversed.

*Preston, Thorgrimson & Turner* and *Peters & Powell,* for appellants.

*C. D. Cunningham* and *Dysart & Ellsbury,* for respondent Cuddy.

*H. O. Grimm* and *P. M. Troy,* for respondents City of Centralia *et al.*

[1]Reported in 190 Pac. 909.

MAIN, J.—This action was brought by a taxpayer for the purpose of having certain municipal water bonds declared illegal and void. The defendants were the city of Centralia and its officers, the original purchaser of the bonds, and two of the present bondholders. From the judgment entered by the superior court holding that the bonds were not void, but applying the penalty provisions of the usury statute thereto, the two bondholders appeal. Carstens & Earles, Incorporated, was dismissed out of the action, apparently on the ground that the statute of limitations had run against any right of this corporation, and all parties seemed to have acquiesced in that ruling. The essential facts to be stated are not in substantial dispute.

On December 10, 1912, the voters of the city of Centralia authorized the city officers to acquire a water system and to issue bonds therefor in the sum of $300,000, bearing interest at the rate of not to exceed six per cent per annum. The election was called and held pursuant to Ordinance No. 281 of the city. After the proposition had been approved by the voters, the city advertised for bids for the sale of the bonds; and on March 18, 1913, the entire issue was sold to Carstens & Earles, a corporation, for the sum of $287,326 and accrued interest. After the bonds had been delivered to Carstens & Earles, they were sold by that corporation to various purchasers. As above stated, two of such purchasers are parties to this action; C. K. Sturtevant, of Seattle, was the owner of bond No. 259, and Samuel P. Strang, of Portland, Oregon, was the owner of bonds Nos. 587 and 588. In all, six hundred bonds were issued by the city, each in the sum of $500, and each carrying coupons evidencing the semi-annual interest due thereon. From the time the bonds were delivered until the institution of this action, which was on the 16th of October, 1918, the

city had regularly paid the semi-annual interest coupons as they became due. On the back of each of the bonds is printed chapter 150 of the Laws of 1909, which is an act giving power to cities and towns to acquire and operate certain public utilities, and providing for the modes of payment therefor. There was also printed on the back of each of the bonds Ordinance No. 281, which submitted the matter of acquiring a water system to the voters of the city, and also Ordinance No. 302, which provided for the issuance of $300,000 of special water bonds in accordance with the proposition submitted by Ordinance No. 281. Ordinance 302 provides that bonds 1 to 12, inclusive, shall be payable on May 1, 1919, bonds 13 to 26, on May 1, 1920, and a certain number of bonds shall be payable on May 1 each year thereafter until May 1, 1938, when bonds Nos. 551 to 600 shall become payable. The ordinance sets out an exact copy of the bond to be issued. In the bond there is a recital as follows:

"It is hereby found and declared, that said bonds are issued pursuant to and in strict compliance with chapter 150 of the Laws of 1909 of the state of Washington, and of the ordinances of said city of Centralia, referred to in this bond and printed hereon, and that all acts, things, elections, ordinances, resolutions, and conditions precedent, precedent to the right to issue and deliver this bond, as prescribed by said statute and ordinances, have happened, existed, and been done and performed prior to the issuance hereof."

The bonds bore interest at the rate of six per cent per annum. The total issue of the face value of $300,000, as above stated, was sold to Carstens & Earles for the sum of $287,326. The taxpayer claims that, since the bonds were sold at a discount, which would cause the payment of interest upon the amount of money the city received to be at a rate greater than six per cent per annum, they are void, and asks to have

their payment enjoined. Under § 8008 of Remington's Code, which is one of the sections of the act under which the bonds were issued, the city was not authorized to sell the bonds at a discount which would result in the payment of interest at the rate of more than six per cent per annum upon the money received therefor by the city. Sturtevant and Strang, the appellants, contend that, by reason of the recital in the bonds, the city is now estopped to question their validity in the hands of purchasers who acquired them for value and without knowledge or notice that they had been sold at a discount not authorized by law.

The trial court adopted neither of these contentions, but entered a judgment in favor of Sturtevant and Strang, after applying to each bond the penalty of the provision of the usury statute. The bonds were not due at the time of the trial and are not yet due, and neither of the bondholders asks for a judgment thereon. The prayer in their answer was for a dismissal of the action.

In applying the usury statute to the bonds in question, we think the trial court was in error. The rate of interest which the city was required to pay by reason of the fact that the bonds were sold at a discount, while greater than six per cent, did not equal eight per cent. This was an action in equity, and one of the equitable doctrines is that a party coming into equity must offer to do equity. In applying this doctrine, the courts, so far as we are advised, have uniformly held that a party seeking to be relieved from an usurious contract must at least offer to return what he has received under the contract. There is no such offer in this case. There is another reason why the usury statute is not applicable to the bonds. The bonds, as already stated, were issued payable out of a special fund, as authorized by § 8008 of Remington's 1915

Code. In this section there is a provision that bonds issued thereunder shall bear interest "not exceeding six per cent per annum." Neither the section nor the act of which it is a part makes any provision for a penalty when bonds have been sold so that the rate of interest which the city would be required to pay is greater than six per cent. In 1899, the legislature passed a law establishing the legal rate of interest and fixed the penalty when a greater rate of interest than that there specified was contracted for. Laws of 1899, chapter 80, p. 128. This law is codified in Remington's 1915 Code in §§ 6250 to 6256, inclusive, and has not, subsequent to its passage, been amended. Section 4 of the act is as follows:

"All county, city, town and school warrants, and all warrants or other evidences of indebtedness, drawn upon or payable from any public funds, shall bear interest at a rate not greater than eight per centum per annum, unless a less rate be specified therein."

Section 7 of the act provides that, if a greater rate of interest than is "hereinbefore" allowed shall be contracted for, the contract shall not be void. The section also fixes the penalties which may be visited upon a party to an usurious contract when an action is brought thereon. Under this section the penalties refer to cases where the rate of interest has exceeded that "hereinbefore" provided for. As applied to city bonds, under § 4, the penalty could not be invoked unless such bonds bore interest at a rate greater than eight per cent per annum. Section 7 does not provide that, if any rate of interest be exacted greater than that allowed by law, the penalty provisions of the act shall be applicable. While the bonds in the present case were sold at a rate greater than that allowed by the act under which they were issued, they are not

subject to the penalty provisions of the usury statute because the section providing for such penalties refers only to a greater rate of interest than is "hereinbefore" provided for. In support of the position that the penalty provision of the usury statute should be applied to these bonds, the cases of *Uhler v. Olympia,* 87 Wash. 1, 151 Pac. 117, 152 Pac. 998, and *Spear v. Bremerton,* 90 Wash. 507, 156 Pac. 825, are cited. In neither of those cases was the court construing the usury statute. There is language in them, especially in the former, which refers to a rate of interest greater than that allowed under § 8008 as usurious, but the language was used as describing a rate of interest greater than that allowed by the law under which the bonds were proposed to be issued, and had no reference to the question whether the penalty provision of the usury statute proper was applicable. The question of usury, however, in this case is largely incidental and is not one of the primary questions about which the controversy is waged. The bonds here involved, in the hands of parties who had purchased them for value with no knowledge of any infirmity therein, are either valid or void.

Upon this branch of the case, the two questions which seem to us controlling are, first: Does the doctrine of estoppel by recitals apply to these bonds; and second, if it does, were the purchasers, Sturtevant and Strang, required to examine the records of the city of Centralia for the purpose of ascertaining at what price the bonds were sold to Carstens & Earles? In considering these questions, it must be remembered that it is not the original purchaser that is here involved, but those that acquired the bonds in the open market from, or after they had been sold by, the original purchaser, and who took them without knowledge or notice that they were sold at a discount not authorized by

law. The question as to when the doctrine of estoppel
by recitals in the bonds will prevent a municipality
from raising certain defenses after the bonds have
passed into the hands of a *bona fide* holder for value
has frequently been before the United States supreme
court. In fact, most of the adjudications are from
that tribunal, the question having generally arisen be-
tween the municipal corporation issuing the bonds and
a nonresident holder.

In Dillon on Municipal Corporations it is said the
decisions of the United States supreme court on the
question are practically controlling. After reviewing
certain decisions of that court, the author, in vol. 2
(5th ed.), § 914, states the rule to be as follows:

"The cases referred to in the last two sections af-
ford, perhaps, a more striking illustration than any
previously decided by that court, that the *purchaser
may implicitly rely upon the recitals in the bonds,*
made by the proper officers, that the authority to issue
them has arisen, and that he is under no obligation,
unless the statute so prescribes, to consult the records
of the municipality, and is not charged with construc-
tive notice of their contents; and this, too, it will be
observed, where the recital in the bonds was general
and not specific in its nature, and where the facts
which would have shown the issue of the bonds to have
been illegal were matters appearing upon the public
records of the township."

In *Sutliff v. Lake County Commissioners,* 147 U. S.
230, the court had before it an issue of bonds by Lake
county, in the state of Colorado. In that state the
amount of debt which a county could incur was limited
by the constitution and by statute. The statute re-
quired the county commissioners to publish and enter
upon the public records of the county semi-annual
statements showing the whole amount of the county
debt. The bonds issued were in excess of the debt

limit fixed by the constitution and statute. The bonds contained a recital that all of the provisions of the act under which they had been issued had been fully complied with by the proper officers. There was no specific recital that, in issuing the bonds, the constitutional debt limit of the county had not been exceeded. It was there held that the recital in the bonds that all of the provisions in the statutes had been complied with did not estop the county from defending against the bonds on the ground that they were issued in violation of the constitution.

In *Gunnison County Commissioners v. Rollins*, 173 U. S. 255, bonds issued by Gunnison county, Colorado, were involved. The county defended on the ground that it had no right to issue the bonds because in so doing it had exceeded the debt limit fixed by the statute and the constitution of the state. In the bonds there involved there was a recital that their issue did "not exceed the limit prescribed by the constitution of the state of Colorado." It was held that this specific recital that the constitutional debt limit had not been exceeded by the issuance of the bonds estopped the county from defending on that ground. In that case the previous decisions of that court upon the question were considered, reviewed and distinguished. The same statute and constitutional provision was involved as in the *Sutliff* case.

The rule stated in Dillon on Municipal Corporations, above quoted, as well as the decision in each of the cases just referred to, has reference to applying the doctrine of estoppel to municipal bonds which are negotiable under the law merchant or the negotiable instrument act. The taxpayer in this case argues that the doctrine should not be here applied because the bonds involved are not negotiable in the full sense, for the reason that they are payable out of a particular

fund, to wit, the revenue from the water system. Under § 3394 of Remington & Ballinger's Code, an order or promise to pay only out of "a particular fund is not unconditional," and such a bond is therefore not a negotiable instrument as defined in that act. Admitting that the bonds here in question are not negotiable instruments under the law merchant or the negotiable instrument act, the question arises whether the doctrine of estoppel by recital should be applied to bonds such as these. On their faces the bonds are made payable to "bearer," and therefore passed from hand to hand by delivery. The statute under which they are issued provides that the holder thereof shall have a valid claim against the special fund created for their payment, and that the holder may bring an action thereon against the city issuing them.

While the adjudicated cases deal largely with bonds negotiable in the full sense, it is not the fact of negotiability that causes the estoppel, but the recitals. Even negotiable bonds, if issued by a municipality without power, are not subject to the doctrine of estoppel by recitals when the bonds are in the hands of a *bona fide* holder. The estoppel operates upon the irregularity in the issuance of bonds, and not upon the power of the municipality to issue them. A sale of bonds by a municipal corporation at a price which will require the payment of a greater rate of interest than that provided by statute is a mere irregularity and does not affect the power of the municipality to make and issue the bonds.

In Dillon on Municipal Corporations (5th ed.), vol. 2, page 1401, it is said:

"A sale of the bonds at less than par, contrary to the statutory direction, does not affect the fundamental power of the municipality to make and issue the bonds; it is a mere irregularity in the exercise of its powers,

and the validity of the bonds is not affected thereby in the hands of innocent purchasers for value."

In *County of Clay v. Society for Savings,* 104 U. S. 579, two classes of bonds were involved, one negotiable and the other not negotiable because payable upon a condition. The doctrine of estoppel was there applied to both classes of bonds, but the question as to whether it should be applied in one case and not the other was not suggested or discussed in the opinion. The holding cannot, therefore, be considered an authority for applying the doctrine to nonnegotiable bonds. As relating to individuals, the doctrine of estoppel by recitals has been applied to instruments not negotiable in the full sense. *Weyh v. Boylan,* 85 N. Y. 394; *Musselman v. McElhenny,* 23 Ind. 4. Where the question is one between individuals, it appears that the estoppel operates, even though the bonds are not negotiable in the full sense.

This court has announced the doctrine that the same rule or standard which measures the rights and liabilities of individuals should be applied to the business contracts of municipal or public corporations. Since it is not the negotiability that works the estoppel, but the recitals, it seems to us that the doctrine should be applied to the bonds in this case. When it becomes a question between an innocent purchaser of bonds in the open market and the city purporting to issue them, as to which should be the loser by a breach of duty on the part of the city officers, such question should be solved in favor of the innocent purchasers. *Schmidt v. City of Defiance,* 117 Fed. 702. The bonds in question have all the characteristics of negotiability, except that they are made payable out of a particular fund.

It is true that in Ruling Case Law, vol. 19, page 1014, the rule is stated to be that the doctrine of estoppel

by recitals does not apply to nonnegotiable municipal
bonds. In support of this statement there is cited
*Gunnison County Commissioners v. Rollins,* 173 U. S.
255; *Goose River Bank v. Willow Lake School Town-
ship,* 1 N. D. 26, 44 N. W. 1002. In the case first cited,
the question was not involved or discussed. In the
North Dakota case, the question did not involve bonds,
but warrants. There a teacher had been employed
who did not hold a lawful certificate, and, under the
express terms of the statute, her contract was void.
That case cannot be regarded as controlling.

In *Washington County v. Williams,* 111 Fed. 801,
there is a statement that the purchaser in the open
market of nonnegotiable bonds of a municipal corpo-
ration cannot invoke for his protection the doctrine of
estoppel by recitals. Not only was the question not
necessarily involved in that case, but the court there
was considering a case where it was claimed that the
bonds had been issued without power. If issued with-
out power, as above stated, it is the general rule that
the doctrine does not apply.

This brings us to the second question, which is
whether the purchasers in the open market, for value
and without knowledge or notice of any infirmity in
the bonds, were required to examine in the city records
the contract made with Carstens & Earles and deter-
mine whether the bonds were sold so that a greater
rate of interest would be paid than that allowed by
law. The bonds, as above stated, contain a copy of
the act of the legislature which authorized their is-
suance, a copy of the ordinance submitting the ques-
tion to the voters of the city, and a copy of the ordi-
nance providing for the issuance and sale of the bonds.
This last ordinance recites that the bonds had been
sold to Carstens & Earles and that a contract for such

sale had been entered into. The bonds on their faces recite that,

"All acts, things, elections, ordinances, resolutions and conditions precedent to the right to issue and deliver this bond, as prescribed by said statute and said ordinances, have happened, existed and been performed prior to the issuance hereof."

This is a specific recital that every condition precedent to the issuance of the bonds had been performed, and under the rule stated by Judge Dillon, was sufficient to work an estoppel, and the purchasers in the open market were not required to look into the records of the city and examine the details of the contract which had been made with Carstens & Earles.

The statute under which the bonds were issued, § 8008, Remington's Code, authorizes the officers of the city, upon the conditions there specified, to issue and sell bonds. It is further provided that such bonds "shall be sold in such manner as the corporate authorities shall deem for the best interest of the city." Here was general authority to the officers of the city to determine whether the conditions precedent necessary to the issuance of the bonds had been performed. Specific authority to that effect was not required, since full control of the matter was given to the corporate authorities. McQuillin on Municipal Corporations; vol. 5, p. 4891. Section 7642 of Remington & Ballinger's Code, which is one of the sections under the general title of Municipal Corporations, requires that all orders of a city council shall be entered upon the journal of its proceedings. The fact that the price at which the bonds had been sold could have been discovered by examining the records of the city council will not prevent a *bona fide* purchaser from relying upon the doctrine of estoppel.

In McQuillin on Municipal Corporations, vol. 5, § 2335, it is said:

"Recitals in municipal bonds are binding notwithstanding that they are contrary to matters appearing of public record. This is the rule in force at present."

In *Waite v. Santa Cruz*, 184 U. S. 302, municipal bonds had been issued which contained the recital that all "acts, conditions and things required by law at which time precedent to and in the issuance of said bonds had been properly done, happened and performed in legal and due form, as required by law." The bonds in that case referred to a certain ordinance of a municipality. If the ordinance had been examined by the purchasers of the bonds, it would have disclosed a portion of them invalid. The court there applied the doctrine of estoppel and used this language:

"The City of Santa Cruz had power, under the constitution and laws of California, to refund its outstanding indebtedness, evidenced by bonds and warrants. The nature and extent of such indebtedness were matters peculiarly within the knowledge of its constituted authorities. When, therefore, the refunding bonds in suit were issued with the recitals therein contained, the city thereby represented that it issued them under and in pursuance of and in conformity with the act of 1893 and the constitution of the state. As nothing on the face of the bonds suggested that such representations were false, purchasers had the right to assume that they were true, especially in view of the broad recital that everything required by law to be done and performed before executing the bonds had been done and performed by the city. As there was power in the city to issue refunding bonds to be used in discharging its outstanding indebtedness of a specified kind, purchasers were entitled to rely upon the truth of the recitals in the bonds, that they were of the class which the act of 1893 authorized to be refunded. They were under no duty to go further and examine the ordinances

of the city to ascertain whether the recitals were false. On the contrary, purchasers could assume that the ordinances would disclose nothing in conflict with the recitals in the bonds.''

The case of *Presidio County v. Noel-Young Bond & Stock Co.*, 212 U. S. 58, is to the same effect. There is nothing on the face of the bonds involved in the present action that indicates that the recitals therein are untrue. The city council had general authority to determine whether the conditions precedent had been performed. The defects in the bonds constituted a matter peculiarly within the knowledge of the corporate authorities. The fact that the statute under which the bonds were issued and the two ordinances were printed in full upon the backs of the bonds would indicate that the city council intended thereby to convey to the purchaser in the open market that he would thereby get all the information which was necessary for him to have to determine the validity of the bonds.

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

All concur.