[No. 11142. Department Two. September 8, 1913.]

OLAF HANSON et al., Appellants, v. KITTITAS RECLAMATION
DISTRICT et al., Respondents.[1]

WATERS AND WATER COURSES—IRRIGATION DISTRICTS—ORGANIZA
TION—PROCEEDINGS—JURISDICTION. In forming an irrigation district under Rem. & Bal. Code, §§ 6416-6494, providing that the county
commissioners shall hear the petition and make such changes in the
boundaries as they find proper, by excluding lands of a certain
class and condition and including lands improperly omitted, the
commissioners have jurisdiction to determine whether the lands included have a sufficient water supply for irrigation from any source,
and their decision thereon is final and conclusive, unless set aside
or annulled by a court in a proceeding to review the same; notwithstanding that the law provides that the board shall not include
"any lands which will not, in the judgment of said board, be benefited by irrigation by said system, or which have a sufficient water
supply for irrigation from any source."

SAME—PROCEEDINGS — CONFIRMATION— CONCLUSIVENESS—NOTICE—
ESTOPPEL. Landowners in an irrigation district are estopped from
asserting that they had no notice of the proceedings to establish the
district and that the hearing was fraudulently concealed from them
and their land wrongfully and irregularly included in the district,
where the formation of the district was afterwards confirmed, as
provided by law, by proceedings in the superior court, wherein special findings were made on all the objections urged against the
regularity of the proceedings, which were approved and confirmed.

SAME—PROCEEDINGS—NOTICE—SUBSTITUTED SERVICE. Proceedings
in the superior court to confirm the formation of an irrigation district under Rem. & Bal. Code, § 6416 et seq., are in rem, the object
being to fix the status of the district and issue valid bonds, and may
be instituted by publication of notice without personal service on
all persons who are within the jurisdiction of the court.

SAME—NOTICE—FORM. A notice of the confirmation of proceedings to form an irrigation district is not objectionable in form in
that the typewritten title of the case had been in part erased by
drawing a line through certain words, which were subsequently rewritten in the title with a pen.

SAME—CONFIRMATION—RES JUDICATA. In proceedings to confirm
the formation of an irrigation district, a complaint sufficiently
broad to include the issue, and special findings that all the lands in-

[1]Reported in 134 Pac. 1083.

cluded in the district require artificial irrigation and are sus-
ceptible of one mode of irrigation from a common source by the same
system of works, and have not a sufficient water supply from any
source other than proposed by said district, are sufficient to make
the proceedings *res judicata* on the question as to whether certain
lands included had a sufficient water supply for irrigation from any
other source.

SAME—PROCEEDINGS—BONDS—VALIDITY—INJUNCTION.    The issu-
ance of bonds by an irrigation district, formed under Rem. & Bal.
Code, § 6416 *et seq.*, will not be enjoined because there is no source
of water to supply the district other than by a contract with the
United States government for the use of flood waters stored in
reservoirs to be constructed by the Federal government, where there
does not appear to be such an irreconcilable conflict between the
state and Federal laws as to prevent a working agreement being
made with the Federal government for such water supply.

SAME—BONDS—BOARD OF DIRECTORS — INJUNCTION — CONTROL BY
COURTS.    The issuance of such bonds will not be enjoined because of
the uncertainty of securing a supply of water, in the absence of the
allegation of definite facts warranting an interference by the courts;
since the board of directors are clothed with a wide discretion and
the courts will not interfere in mere questions of good business
policy.

Appeal from a judgment of the superior court for Kittitas
county, Chapman, J., entered October 9, 1912, in favor of
the defendants, upon the pleadings, in an action for equitable
relief.    Affirmed.

*Ballinger, Battle, Hulbert & Shorts*, and *Parker & Rich-
ards*, for appellants, contended that the lands of plaintiffs
already have a sufficient water supply for the irrigation there-
of from another source, hence the county commissioners had
no jurisdiction to include said lands in the district.    Rem. &
Bal. Code, § 6417; *Andrews v. Lillian Irr. Dist.*, 66 Neb.
458, 92 N. W. 612, 97 N. W. 336; *State v. Several Parcels of
Land*, 80 Neb. 424, 114 N. W. 283; *Harelson v. South San
Joaquin Irr. Dist.*, 20 Cal. App. 324, 128 Pac. 1010;
*Ahern v. Board of Directors of High Line Irr. Dist.*, 39
Colo. 409, 89 Pac. 963.    The directors of the board did not,
prior to calling the bond election, determine the amount of
money to be raised, nor did they know from what source

water could be obtained or the cost thereof, and hence had
no authority to call the election. Rem. & Bal. Code, § 6430;
*Cullen v. Glendora Water Co.,* 113 Cal. 503, 39 Pac. 769, 45
Pac. 822, 1047. The action of the county commissioners in
wrongfully including plaintiffs' land in the district can only
be tested by mandamus, certiorari, or a suit in equity; hence
it was error to hold that the county commissioners were not
proper parties to this action. 26 Cyc. 173; 11 Cyc. 404;
*State ex rel. Banks v. Board of Com'rs of Snohomish County,*
18 Wash. 160, 51 Pac. 368; *Inglin v. Hoppin,* 156 Cal. 483,
105 Pac. 582; *Chinn v. Superior Court of San Joaquin
County,* 156 Cal. 478, 105 Pac. 580; *Puterbaugh v. Wad-
ham,* 162 Cal. 611, 123 Pac. 804; *Harelson v. South San
Joaquin Irr. Dist., supra.* This action is a direct and
not a collateral attack upon the order of the board of county
commissioners and the confirmatory decree entered by the
superior court of Kittitas county. *Christofferson v. Pfennig,*
16 Wash. 491, 48 Pac. 264; *Northwestern & Pac. Hypotheek
Bank v. Ridpath,* 29 Wash. 687, 70 Pac. 139; *Donaldson v.
Winningham,* 48 Wash. 374, 93 Pac. 534, 125 Am. St. 937;
*Dormitzer v. German Sav. & Loan Soc.,* 23 Wash. 132, 62
Pac. 862. The findings and decree in the confirmatory pro-
ceedings go beyond and outside the issues as defined in the
petition and notice, and to that extent are void. Black,
Judgments (1st ed.), §§ 242, 614; 619; *Holly v. Munro,* 55
Wash. 311, 104 Pac. 508, 133 Am. St. 1028; *Spoors v.
Coen,* 44 Ohio St. 497, 9 N. E. 132. The decree of confirma-
tion did not have the effect of giving validity to the pro-
ceedings. 3 Farnham, Waters, § 618; 11 Cyc. 404; *Tregea
v. Modesto Irr. Dist.,* 164 U. S. 179; *People v. Perris Irr.
Dist.,* 142 Cal. 601, 76 Pac. 381; *Kinkade v. Witherop,* 29
Wash. 10, 69 Pac. 399. The plaintiffs, being residents of
Kittitas county, service could not be made upon them in the
confirmatory action by publication. *In re Smith's Petition,*
9 Wash. 85, 37 Pac. 311, 494; *Kinkade v. Witherop, supra.*
A contract with the United States for storage water would

be illegal, owing to the irreconcilable conflict between the provisions of the Warren act and the statutes of this state. Rem. & Bal. Code, § 6426; *Mumma v. Potomac Co.*, 33 U. S. 281; General Discussion of Irrigation District Organization, Weil, Waters (3d ed.), ch. 58.

*Bogle, Graves, Merritt & Bogle*, for respondents, contended that irrigation acts founded upon the California "Wright Act," have been uniformly sustained. 3 Kinney, Irrigation and Water Rights (2d ed.), §§ 1405, 1406; *Little Walla Walla Irr. Dist. v. Preston*, 46 Ore. 5, 78 Pac. 982; *Lundberg v. Green River Irr. Dist.* (Utah), 119 Pac. 1039, and cases cited below. The validity and regularity of the organization of the irrigation districts, cannot be collaterally attacked. 3 Kinney, Irrigation and Water Rights (2d ed.), § 1408; *People v. Linda Vista Irr. Dist.*, 128 Cal. 477, 61 Pac. 86; *Quint v. Hoffman*, 103 Cal. 506, 37 Pac. 514, 777; *Miller v. Perris Irr. Dist.*, 85 Fed. 693; *Id.*, 92 Fed. 263; *People v. Jefferds*, 126 Cal. 296, 58 Pac. 704; *Oregon Short Line R. Co. v. Pioneer Irr. Dist.*, 16 Idaho 578, 102 Pac. 904; *People ex rel. Fogg v. Perris Irr. Dist.*, 132 Cal. 289, 64 Pac. 399, 773; *Quinton v. Equitable Inv. Co.*, 196 Fed. 314; *Rothchild Bros. v. Rollinger*, 32 Wash. 307, 73 Pac. 367; *Purdin v. Washington etc. Ass'n*, 41 Wash. 395, 83 Pac. 723. The decree of confirmation is conclusive. 3 Kinney, Irrigation and Water Rights (2d ed.), § 1421; *Board of Directors of Modesto Irr. Dist. v. Tregea*, 88 Cal. 334, 26 Pac. 237; *Rialto Irr. Dist. v. Brandon*, 103 Cal. 384, 37 Pac. 484; *Crall v. Poso Irr. Dist.*, 87 Cal. 140, 26 Pac. 797; *Cullen v. Glendora Water Co.*, 113 Cal. 503, 39 Pac. 769, 45 Pac. 822, 1047; *In re Madera Irr. Dist.*, 92 Cal. 296, 28 Pac. 272, 675, 27 Am. St. 106; *Directors of Fallbrook Irr. Dist v. Abila*, 106 Cal. 355, 39 Pac. 794; *People ex rel. Fogg v. Perris Irr. Dist.*, *supra*; *Nampa & M. Irr. Dist. v. Brose*, 11 Idaho 474, 83 Pac. 499; *Anderson v. Grand Valley Irr. Dist.*, 35 Colo. 525, 85 Pac. 313; *Herring v. Modesto*

*Irr. Dist.*, 95 Fed. 705; *Alfalfa Irr. Dist. v. Collins*, 46 Neb. 411, 64 N. W. 1086; *Title & Document Restoration Co. v. Kerrigan*, 150 Cal. 289, 88 Pac. 356, 119 Am. St. 199, 8 L. R. A. (N. S.) 682; *Oregon Short Line R. Co. v. Pioneer Irr. Dist., supra; Settlers' Irr. Dist. v. Settlers' Canal Co.*, 14 Idaho 504, 94 Pac. 829; *Board of Directors Middle Kittitas Irr. Dist. v. Peterson*, 4 Wash. 147, 29 Pac. 995; *State ex rel. Witherop v. Brown*, 19 Wash. 383, 53 Pac. 548; *Purdin v. Washington etc. Ass'n, supra*. The purpose of the decree is to furnish a barrier against subsequent attacks, and it is *res judicata*. *O'Neill v. Yellowstone Irr. Dist.*, 44 Mont. 492, 121 Pac. 283; *Fogg v. Perris Irr. Dist.*, 154 Cal. 209, 97 Pac. 316; *Miller v. Perris Irr. Dist.*, 92 Fed. 263; *Progressive Irr. Dist. v. Anderson*, 19 Idaho 304, 114 Pac. 16. The determination of the character of the land is committed to the board of supervisors. 3 Kinney, Irrigation and Water Rights (2d ed.), § 1412; *Herring v. Modesto Irr. Dist.; Board of Directors of Modesto Irr. Dist. v. Tregea; In re Madera Irr. Dist.*; and *Oregon Short Line R. Co. v. Pioneer Irr. Dist., supra; Fallbrook Irr. Dist. v. Bradley*, 164 U. S. 112, 167; *Knowles v. New Sweden Irr. Dist*, 16 Idaho 235, 101 Pac. 87. This is a collateral attack. 1 Black, Judgments, § 252; *Peyton v. Peyton*, 28 Wash. 278, 68 Pac. 757; *Kalb v. German Sav. & Loan Soc.*, 25 Wash. 349, 65 Pac. 559, 87 Am. St. 757; *Morrill v. Morrill*, 20 Ore. 96, 25 Pac. 362, 23 Am. St. 95, 11 L. R. A. 155; *Meinert v. Harder*, 39 Ore. 609, 65 Pac. 1056; *Harter v. Shull*, 17 Colo. App. 162, 67 Pac. 911; *Cochrane v. Parker*, 12 Colo. App. 169, 54 Pac. 1027.

FULLERTON, J.—The appellants, plaintiffs below, severally own tracts of land situated within the boundaries of the Kittitas reclamation district. By this action, they seek to have their lands excluded therefrom, and to have the officers of the district enjoined from levying taxes, assessments or other charges on behalf of the district which will encumber or

cloud the title to their lands. To the complaint, an answer
was interposed, and to the answer, a reply. When the case
was called for trial on the issues as thus made, the defendants,
respondents here, moved for judgment upon the pleadings.
This motion the trial court granted, entering a judgment to
the effect that the plaintiffs take nothing by their action.

The pleadings show that the district in question, was or-
ganized under the statutes relating to the organization and
government of irrigation districts. Rem. & Bal. Code,
§§ 6416-6494 (P. C. 271 §§ 1-157). The complaint does not
question the regularity of the proceedings had in the or-
ganization of the district in so far as they are disclosed by
the records of such proceedings, but facts are alleged which
are thought to show that the board of county commissioners
before whom the district was organized did not have juris-
diction to include the lands of the appellants within the dis-
trict, and facts which go to the regularity of the proceed-
ings had in the organization of the district that do not ap-
pear on the face of the record, together with certain matters
occurring since the formation of the district which are thought
to render the bond issue illegal. The respondents for answer
deny the facts on which the jurisdictional question is based,
and also the facts concerning the irregularities thought to
have occurred in the organization of the district and in the
issuance of the bonds; and to all of the issues sought to be
raised, they enter a plea of *res judicata*. They allege that,
subsequent to the organization of the irrigation district, the
directors thereof, as they were empowered to do under the
statutes (Rem. & Bal. Code, §§ 6489-6494; P. C. 271 §§ 147-
157), brought a special proceeding in the proper court
to determine the legality and validity of the proceedings had
concerning the organization of the district, and the proceed-
ings relating to the issuance of bonds by the district there-
after, and to have such proceedings, if found regular and suf-
ficient, approved and confirmed; that in such proceeding all
of the proceedings had in the organization of the district and

the issuance of bonds were approved and confirmed by the decree of the court, and that the appellants are now estopped to question the sufficiency of such proceedings or the sufficiency of the confirmatory decree. The reply admits the facts alleged concerning the confirmatory proceedings, but questions their legal effect. The trial judge ruled against the contention of the appellants to the effect that the board of county commissioners were without jurisdiction to include their lands within the boundaries of the irrigation district, and held that the decree in the confirmatory proceedings was conclusive of every other question suggested by them in their complaint, holding the proceeding regular and to have been had upon sufficient notice. The appellants take issue with the conclusions of the trial judge, and we shall notice their contentions in the order in which they present them.

The act relating to the organization and government of irrigation districts (Rem. & Bal. Code, §§ 6416-6418; P. C. 271 §§ 1-5), provides that, whenever fifty, or a majority of holders of title or evidence of title holding land susceptible of one mode of irrigation from a common source, and by the same system of works, desire to provide for irrigating their lands, they may organize an irrigation district under the provisions of the act. The method provided for organization is by petition. It is provided that the holders of title or evidence of title to such lands shall present a petition to the board of county commissioners of the county in which the lands, or the greater part of them, are situated, signed by the required number of holders of title or evidence of title, which petition shall set forth and particularly describe the boundaries of the proposed district, and shall pray that a district be formed under the provisions of the act. The petition shall be presented at a regular meeting of the board of county commissioners, and shall be published at least two weeks before the time it is presented, together with a notice stating the time of the meeting in a newspaper printed and published in the county where the petition is to be presented. It is fur-

ther provided that, when the petition is presented to the board
of county commissioners, the board shall hear the same, and
may adjourn such hearing from time to time, not exceeding
four weeks in all, and on the final hearing may make such
changes in the proposed boundaries of the district as they
may find proper, and shall establish and define such bound-
aries, but shall not modify the boundaries proposed in the pe-
tition for the district so as to exempt any land which is sus-
ceptible of irrigation from the system of works applicable to
the other lands in the proposed district, "nor shall any lands
which will not, in the judgment of said board, be benefited by
irrigation by said system, or which have a sufficient water
supply for irrigation from any source, be included within such
district." After forming the boundaries of the district, the
board of county commissioners are required to submit the
question of organization to the electors residing within the
proposed district holding title or evidence of title to land in
such district; when, if the vote be favorable, they shall, by an
order entered on their minutes, declare such territory or-
ganized as an irrigation district, under the name and style
designated in the petition.

The appellants allege in their complaint that their lands,
while within the boundaries of the proposed district, have a
sufficient water supply from a source different from that ap-
plicable to the other lands within the proposed district, and
are now, and were at the time the district was organized, be-
ing irrigated from such source; and their contention is that,
owing to the clause of the statute we have quoted, the board
of county commissioners were without jurisdiction to include
them within the boundaries of the proposed irrigation dis-
trict, and hence any order they may have made to that ef-
fect, and any judgment of a court confirming such order is
void and of no effect. The argument is that the phrase "in
the judgment of said board," qualifies only that part of the
sentence which relates to land that will not be benefited by
irrigation, empowering the board to determine the status of

such lands only, but leaving them without power to pass upon the status of lands claimed by its owners to have a sufficient water supply for irrigation from a source other than that of the proposed irrigation district.

But we cannot accept this as a proper construction of the statute. Were the statute silent in its other parts with reference to the powers of the board of county commissioners to examine and determine the character of the lands that may be included in an irrigation district, we think it at least a debatable question whether the qualifying phrase should be given the effect contended for by the appellants; but other portions of the act make it clear that no such effect was intended. It will be remembered that the petition presented to the board of county commissioners asking for the formation of the district must set forth the proposed boundaries of the district, and that the board shall "hear the petition" and shall make such changes in the proposed boundaries as they may find to be proper, by excluding lands of a certain class and condition and including other lands improperly omitted. Necessarily, therefore, the board must determine the status of all lands sought to be included within the district, for otherwise they could not perform the duty of excluding included lands of a given status, and of including excluded lands of another. And having such power, the order of the board must, if duly and regularly entered, be final and conclusive upon all the world, unless set aside or annulled by a court in some revisory or correctory proceeding appointed by law for reviewing such orders.

The rule contended for by the appellants would practically render the statute inoperative. If it be true that the board is without power to determine whether lands claimed to be irrigable from a source other than that of the proposed district are or are not of the character contended for, but may be excluded from any district in which they may be included by a court which differs with the board on its findings of fact, then clearly there is no stability to the district's organiza-

tion; it is liable to dissolution at any stage of its existence by the findings of such court. Furthermore, no investor, who must rely on the district for the return of his investment, could safely buy the bonds of the district, or advance money to its use in any form if the construction here contended for be correct. When we consider that the purpose of organization is to jointly construct and carry on an irrigation project that cannot be constructed by individuals singly, the prime necessity of stability of organization becomes apparent, and renders unquestionable the conclusion that the legislature intended to provide for the creation of a stable rather than a changeable or destructible district.

In support of their construction of the statute, the appellants cite *Andrews v. Lillian Irr. Dist.*, 66 Neb. 458, 92 N. W. 612, (on rehearing, p. 461), 97 N. W. 336. This case, unless the statutes can be differentiated, supports their contention. We cannot, however, follow it as authority. It seems to us to be opposed not only to the better reason but to the unanimous conclusion of all of the other states having statutes founded upon the so-called Wright Act of California, of which our statute is one. These cases we shall not collect here. They can be found, however, practically complete in the briefs of respondents' counsel.

The appellants further contend that, if it be conceded that the board of county commissioners had jurisdiction to pass upon the status of their lands in the formation of the district, yet nevertheless their order is void in this instance because of irregularity and misconduct on the part of the board of county commissioners at the time of the formation of the district. It is alleged that the commissioners heard no proofs or took no evidence as to the character of the lands included within the proposed district at the time its boundaries were fixed by them, but falsely recited in the order establishing such boundaries to the contrary; that the plaintiffs had no actual notice of the time appointed for the hearing before the commissioners, and the promoters thereof, knowing they were

opposed to having their lands included therein, purposely kept them in ignorance of such time; and fault is found in the proceedings had in the organization of the district in other particulars. But we think the appellants are estopped from now urging these objections by the decree of the superior court entered in the confirmatory proceedings. In those proceedings the court made special findings on all of the objections now urged against the regularity of the organization of the district, and found that they were untrue in fact, and, as we have said, entered a decree, as it was empowered by statute so to do, approving and confirming such proceedings. Clearly, therefore, if the decree is valid, it is conclusive of the questions here suggested.

It is urged by the appellants, however, that the decree is without force or effect; that the statute itself is inoperative because it authorizes a decree on insufficient notice given of the commencement of the proceedings, and further that the notice required by the statute was not here given. The objection to the validity of the notice is that it permits a substituted service of the notice, whereas, it is contended, such service to be valid must be a personal service as to all persons who are within the jurisdiction of the court. *In re Smith's Petition*, 9 Wash. 85, 37 Pac. 311, 494, and *Kinkade v. Witherop*, 29 Wash. 10, 69 Pac. 399, are cited as sustaining the contention. In the first case cited, the court held a statute providing for the location of county roads and the awarding of damages to the owners of land taken therefor unconstitutional, because it did not provide for or require personal service upon the landowner whose land would be taken by the establishment of the road. In the second case cited, the court expressly refused to pass on the question whether the rule was applicable to a confirmatory proceeding brought under the present statute. Since giving the question further consideration, we are of the opinion that the rule contended for is not applicable. The confirmatory proceeding under the present statute is clearly a proceeding *in rem*, the object being to de-

termine and fix the status of the district, and its power to issue valid bonds.  The legislature unquestionably has power to pass an act to accomplish the purposes intended, and any form of service which would give reasonable notice of the proceeding is sufficient.  The case is analogous to insolvency and bankruptcy proceedings, to foreclosures by counties for the recovery of delinquent taxes, to final decrees and distributions in probate proceedings, in which service on the parties to be bound by publication has been uniformly held sufficient, regardless of the residence of such parties.

The second part of the objection goes to the form of the particular notice given.  From the exhibit attached to the complaint, it appears that the title of the court was typewritten originally as follows: "In the Superior Court of the State of Washington, in and for Kittitas County;" and that some one erased the words "Washington, in and for Kittitas," by drawing a line through them and subsequently rewrote the words in the title with a pen.  This clearly did not invalidate the notice.

Again, it is claimed that the question whether these lands did not have a sufficient water supply for irrigation from another source than the district source was not an issue in the confirmatory proceedings, as the petition filed with the court did not specifically allege that the lands of the appellants were not so supplied, and the finding by the court upon the question was thus without the issues and therefore of no binding effect.  The precise allegations of the petition filed in the confirmatory proceedings are not set out in this record, but the general statement as to the contents of the petition indicate that it is sufficiently broad to include this particular issue.  The findings of the court made in the proceedings, however, are set forth in full and among them we find the following: "That all of the lands included within the boundaries aforesaid [the boundaries of the irrigation district] require artificial irrigation, and were and are susceptible of one mode of irrigation from a common source by the same system of

works, and have not a sufficient water supply from any source other than proposed by the said district." If it were necessary that a specific allegation be made in the petition and a specific finding be made by the court on the particular matter here suggested to make the decree rendered in the special proceeding *res judicata* of the matter, a question we do not now decide, we think this allegation and this finding sufficiently full and complete to comply with the requirement.

The foregoing comprises the principal reasons suggested by the appellants why their lands should be excluded from the irrigation district. None of them, as we conclude, justify a holding that the district organization is void, or that the appellants' lands are improperly included within the boundaries of the district. The further contentions are directed to the question whether the court erred in refusing to grant a prohibitory injunction, restraining the issuance of bonds or the incurring of further expense by the board of directors of the district. These objections we will now proceed to notice.

The statute, Rem. & Bal. Code, § 6430 (P. C. 271 § 29), provides that, for the purpose of constructing irrigating canals and works and acquiring the necessary property therefor, the board of directors of any irrigation district shall, as soon after such district has been organized as may be practical, "estimate and determine the amount of money to be raised, and shall thereafter immediately call a special election," at which shall be submitted the question whether or not bonds of such district in the amount so determined shall be issued. The record discloses that such an estimate was made by the board of directors of this district, and that their estimate, and the form and manner in which it was made, met the approval of the superior court in its confirmatory decree. The complaint, however, contained the following allegation:

"(9) That there is no water available or which can be had to supply said irrigation system if constructed, or to irri-

gate the lands within said district; that the said directors know and have known at all times that there is not a sufficient amount of water or water rights which said district can acquire by location, purchase or otherwise for the irrigation of the lands embraced in said district; that the source and only source from which the promoters of said irrigation district, or said directors, may hope or expect to obtain water therefor was and is by contract with the United States Government for the furnishing by said government to said district of flood waters to be stored by the United States Government by means of reservoirs to be constructed by the government; that no such contract has been obtained nor has any provision whatsoever been made for obtaining water for the irrigation of said lands, and it is impossible for said irrigation district or its directors to secure water from the United States Government, or from any other source, with which to supply water for said proposed irrigation system.   Notwithstanding this fact and the fact that said irrigation system will, without water, be useless, said directors are proceeding to expend money in preparing for the construction of said irrigation works and are incurring indebtedness in large amounts; that any contract which might be made with the government of the United States, or its officials, for the furnishing of stored waters to said district would be *ultra vires,* owing to the irreconcilable conflict between the statutes of the United States regarding the disposition and use of stored waters, and the statutes of the State of Washington under which said district is organized, and the restrictions placed upon the use of such water by the laws of the United States; that said irreconcilable conflict between the statutes of the United States and said laws of the State of Washington consists, among other things, in the fact that under said acts of Congress, said water could not be furnished from any such reservoir or delivered through any canal or ditch to any one land owner in said district in excess of an amount sufficient to irrigate one hundred sixty acres, and that such right to the use of such water shall be appurtenant to the lands irrigated and beneficial use shall be the basis, the measure and the limit of the right, and that no right to the use of such water for land and private ownership shall be sold for a tract of land exceeding one hundred sixty acres to any one land owner, and that no such sale shall be made to

any land owner unless he be an actual *bona fide* resident on said land or occupant thereof residing in the neighborhood of said land; while by the said laws of the State of Washington it is provided that all waters distributed for irrigation purposes shall be apportioned ratably to each land owner upon the basis of the ratio which the last assessment of such owner for district purposes within such district bears to the whole sum assessed upon the district, and which law of the State of Washington further authorized any land owner to assign the right to the whole or any portion of the waters so apportioned to him, and said laws of the State of Washington, do not limit the use of such water to one hundred sixty acres for any land owner and do not warrant such as do said acts of Congress, the placing of any restrictions upon the right of any land owner to assign the right to the whole or any portion of the water's use apportioned to him, nor, under the laws of the State of Washington, can said irrigation district refuse to deliver the proper proportion of water to any land within the district that may be owned by a non-resident; that, as shown by said Exhibit "A" hereto attached, certain of the plaintiffs in this action own land within the boundaries of said irrigation district largely in excess of one hundred sixty acres."

It is contended by the appellants that the facts here recited show that the proceedings relating to the issuance of bonds are void. It is pointed out that, by the provisions of the statute, the board of directors of the district, before calling an election for the issuance of bonds, must estimate and determine the amount of money to be raised by the district; and it is argued that no estimate other than a sham and fictitious estimate could be made by the board of directors for the reason stated in the allegation of the complaint from which we have quoted, namely, that there was no known source from which water for irrigation purposes could be acquired by the district except from the government of the United States, and as to this source an irreconcilable conflict in the laws between the state and Federal government rendered it unavailable. We shall not examine this question in detail. Our examination of the statutes referred to, however, has not convinced us that they are so far inflexible that a working ar-

rangement between the district and the government of the
United States for the use of its storage waters cannot be
agreed upon.   The record shows that the intake of the dis-
trict's proposed canals are on the Yakima river and that it
is from this source that the district proposes to take water.
The government's proposed reservoirs for storing water are
at the source of that stream.   If it be true that the unappro-
priated waters remaining in that stream are insufficient in
the dry season of the year to supply the quantity of water
the district will require, there appears to us no valid reason
why they may not arrange with the government to supply
that deficiency.   It is true the success of the district in this
respect will depend somewhat upon the construction placed
upon the law by the officers of the government having in
charge their administration, but the appellants quote a letter
from the office of the secretary of the interior in which the
belief is expressed that the differences are not irreconcilable.
It would seem, therefore, that the possibility of obtaining a
water supply is not so remote or uncertain as to render it im-
possible for the board of directors of the district to make a
reasonably accurate estimate of the cost thereof.   It was not
intended by the statute that the estimate be more than this.
The board of directors could not, prior to making such esti-
mate, safely enter into contracts for the purchase of water
or the construction of irrigating canals and ditches.   The
law provides no other means for raising funds to meet expen-
ditures for such purposes than the issuance and sale of bonds,
and as the estimate of cost must be made before the issuance of
bonds can be authorized by a vote of the district, common
prudence dictates that no binding obligation be entered into
for the expenditure of money prior to the time it is known
with certainty that the money is forthcoming.   We find, there-
fore, no reason for the conclusion that the bonds are void for
want of a proper estimate.

Finally, it is contended that the board of directors of the
district should be enjoined from incurring further indebted-

ness on behalf of the district until a water supply is secured from some certain source. This contention is likewise founded on the allegation of the complaint to the effect that the district has no contract for a supply of water, and there is no source from which a supply of water can be obtained other than through a contract with the United States government. But we do not think the facts alleged are sufficiently definite to warrant an interference on the part of the courts. The board of directors are clothed by the statute with a wide discretion as to the manner in which they shall manage the business of the district, and the courts are not warranted in interfering on any mere question of good business policy. Nothing short of a gross abuse of their powers will warrant such an interference.

We find no substantial error in the record, and the judgment appealed from will stand affirmed.

MORRIS, ELLIS, and MAIN, JJ., concur.