[No. 15724.    Department Two.    September 1, 1920.]

THE BOARD OF DIRECTORS OF THE HORSE HEAVEN
IRRIGATION DISTRICT, *Respondent*, v. E. D.
MINEAH, *et al., Respondents*, VERMONT
LOAN AND TRUST COMPANY
*et al., Appellants.*[1]

WATERS AND WATER COURSES (89)—IRRIGATION DISTRICTS—ESTAB-
LISHMENT—ESTIMATE OF COST—STATUTES. Bonds of an irrigation
district are not invalid for failure of the board of directors to suf-
ficiently comply with Rem. Code, § 6430, requiring the board to
"estimate and determine the amount of money to be raised" before
calling an election for the issuance of bonds, where the estimate
of the cost of the project was made upon information obtained
through investigation and surveys made by a competent engineer
appointed by the board, whose work was checked over and approved
by engineers and attorneys appointed for that purpose, since the
statutes vest the board of directors with large discretion, and con-
template that they shall have before them such information as will
enable them to make a fair, honest and reasonably accurate esti-
mate.

SAME (91)—BONDS—ISSUANCE AND DELIVERY—EFFECT OF ANTE-
DATING—INTEREST ON BONDS. Bonds of an irrigation district dated
January 1, 1918, but not issued and delivered until January 25, 1918,
are not void because ante-dated and in violation of Rem. Code,
§ 6430, requiring that they shall "bear date at the time of their is-
suance"; since "date of issue" when applied to notes, bonds, etc., of

[1]Reported in 192 Pac. 997.

a series, means the date fixed as the beginning of the term for which they run, without reference to the time of their sale or delivery, the testimony showing that the accrued interest was adjusted at the time of their sale and delivery.

SAME (89)—PROCEEDINGS TO ESTABLISH—POWERS OF OFFICERS—STATUTES. The board of directors of an irrigation district have authority to purchase from an irrigation company its surveys, notes, water rights, etc., and to pay for the property by the delivery of bonds of the district, under Rem. Code, § 6427, and the discretion of the board in making the purchase will not be questioned, in the absence of arbitrary conduct or fraud.

SAME (91)—BONDS—VALIDITY—PLACE OF PAYMENT—DESIGNATION IN BONDS. Rem. Code, § 6430, requiring that the principal and interest of irrigation district bonds "shall be payable at the place designated therein," does not prevent the board of directors from designating more than one place for payment, such being the general custom when issuing bonds, and greatly enhancing their value because of the convenience to buyers.

SAME. Such designation in the bonds, making them payable outside the district, does not violate Const., art. 11, § 15, providing that "all moneys of any public or municipal corporation shall be deposited with the treasurer, or other legal depositary, to the credit of the city, town or other corporation"; since if the directors exceeded their powers, the buyers must be held charged with the knowledge thereof, and the provision, in that event, would be merely surplusage and not affect the validity of the bonds.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered September 3, 1919, upon findings in favor of the plaintiff, confirming the regularity and legality of certain irrigation district bonds, tried to the court. Affirmed.

*A. E. Gallagher,* and *Hamblen & Gilbert,* for appellants.

*Carroll B. Graves* and *Peters & Powell,* for respondents.

BRIDGES, J.—The Horse Heaven Irrigation District was organized under the laws of the state of Washington concerning irrigation. The district comprises more than 300,000 acres, located in Benton, Klickitat and

Yakima counties, in the state of Washington. These lands occupy a plateau partly bounded by the Yakima and Columbia rivers. Prior to the organization of this district, the Klitckitat Irrigation & Power Company had made extensive researches with a view to irrigating at least a part of the lands within the present district. After receiving reports of its engineers, the board of directors of respondent district estimated and determined that it would cost $18,250,000 to carry out the project of bringing water to the district in quantities sufficient to irrigate the lands therein, and called an election for the purpose of determining whether the district should issue its bonds in the sum of $18,250,000 for the purpose mentioned. The vote at this election was favorable to the issuance of the bonds. Thereafter the district purchased, for the sum of $200,000, all of the maps, plats, surveys, water rights, etc., of the Klickitat Irrigation & Power Company, and delivered to that company its bonds of the par value of $222,200 in payment therefor. As we understand it, most, if not all, of the remainder of the authorized bonds are still unissued and unnegotiated. This action was brought by the irrigation district for the purpose of having the court confirm the regularity and legality of all these bonds. The trial court found the bonds already negotiated, and those authorized to be issued, to be valid, and entered a judgment to that effect. From this judgment, an appeal has been taken. A prior action had determined the regularity and legality of the formation of the district.

The appellants here do not contend that there was any fraud connected with the subject-matter of this action, nor do they contend that any of the proceedings concerning the election for the authorization of the bonds were irregular, but they do contend that the

bonds are invalid for several reasons, which we will now consider.

(1) Appellants contend that the adoption of a plan or system in intelligent form was a condition precedent to the right of the directors of the district to make any estimate of the amount of money to be raised, or to call an election to vote upon the bonds, and that such board had not so done. This contention is based upon that part of § 6430 of Rem. Code, which provides that, for the purpose of construction, reconstruction, betterment, extension or acquisition of the necessary property and rights, the board of directors of any such district must "estimate and determine the amount of money to be raised, and shall thereafter call a special election." The irrigation district statutes of this state are very liberal and vest the board of directors of the district with large discretion. It seems to have been the intent of the legislature to bind such boards with as few technicalities and to surround them with as few limitations and restrictions as possible. The statute does not require that the "estimate" shall be based on any exact information or on any full and complete plans and specifications. It does not mean that, before making such estimate, the board must know and be able to point out the exact cost of the various items to be included within the estimate. It contemplates that the board shall have before it such information as that it may make a fair, honest, intelligent and reasonably accurate estimate. Nothing more is necessary. Indeed, the statute makes provision for supplying additional funds in the event the amount estimated shall prove to be insufficient, and it anticipates that it may not be necessary to negotiate all the bonds which have been authorized.

Let us see if the estimate made by the board of directors meets the requirements thus stated.

Many years prior to the making of such estimate, and, in fact, prior to the organization of this present district, the Klickitat Irrigation & Power Company made extensive surveys and investigations, through competent engineers, with a view to bringing water to the lands in question. It had many plats, plans and specifications, water measurements, water appropriations, water rights and surveys, and much more useful information. Upon its organization, respondent appointed an experienced and competent engineer to make surveys and investigations with a view to bringing waters to irrigate the lands within the district. After much intelligent investigation, this engineer reported that the water to irrigate these lands must come from the Klickitat river and could not come from any other source; that he had carefully checked the surveys and recommendations of the engineers of the Klickitat Irrigation & Power Company and found them substantially correct, and recommended the purchase of all the maps, plats, survey notes, property and rights of that company for the sum of $200,000. Thereafter the respondent, through its board of directors, appointed a board consisting of two prominent and experienced engineers and two attorneys at law for the purpose of checking the work of its previous engineer and reporting thereon to the board. After extensive investigation these gentlemen reported, confirming almost entirely the report of the board's first engineer, including his recommendation concerning the purchase from the Klickitat Irrigation & Power Company. They estimated that $18,250,000 would be necessary to carry out the project. Thereafter, possessed of all the information so obtained, the board of directors estimated and determined that the cost of the project would be $18,250,000, and called an election to vote on bonds of the district in that amount.

Unquestionably the board of directors had such information as that it could honestly and intelligently, and considering the magnitude of the proposition, quite accurately, estimate the cost of the project.

Appellants chiefly rely on the case of *Cullen v. Glendora Water Co.*, 113 Cal. 503, 39 Pac. 769, 45 Pac. 822, 1047. That case involved what is called the Wright Irrigation Statute of California, from which our statute was originally largely copied. In that case the board of directors had made an estimate of the cost of irrigating the lands within the district. It appeared, however, that, when the board made this estimate, it had made no surveys and almost no investigation; it did not know from what source it could procure water; did not know whether it would undertake to purchase water rights already in use, or undertake to obtain the water from other sources, and, in fact, had no information upon which it could make an intelligent estimate. The court held that the estimate made by the board of directors was not that contemplated by the statute. It is manifest that there is a great difference between the facts of that and the facts in this case. This question, however, is not an entirely new one in this court. In the case of *Hanson v. Kittitas Reclamation Dist.*, 75 Wash. 297, 134 Pac. 1083, this court considered the provision of the statute which we are now discussing. We said:

"It is pointed out that, by the provisions of the statute, the board of directors of the district, before calling an election for the issuance of bonds, must estimate and determine the amount of money to be raised by the district; and it is argued that no estimate other than a sham and fictitious estimate could be made by the board of directors for the reason stated in the allegation of the complaint from which we have quoted, namely, that there was no known source from which water for irrigation purposes could be acquired by the

district except from the government of the United
States, and as to this source an irreconcilable conflict
in the laws between the state and Federal government
rendered it unavailable.''

After discussing whether it was probable that ar-
rangements could be made with the government con-
cerning obtaining water, we further said:

"It would seem, therefore, that the possibility of
obtaining a water supply is not so remote or uncertain
as to render it impossible for the board of directors of
the district to make a reasonably accurate estimate of
the cost thereof.  It was not intended by the statute
that the estimate be more than this.  The board of di-
rectors could not, prior to making such estimate, safely
enter into contracts for the purchase of water or the
construction of irrigating canals and ditches.  The law
provides no other means for raising funds to meet ex-
penditures for such purposes than the issuance and
sale of bonds, and as the estimate of cost must be made
before the issuance of bonds can be authorized by a
vote of the district, common prudence dictates that no
binding obligation be entered into for the expenditure
of money prior to the time it is known with certainty
that the money is forthcoming.  We find, therefore, no
reason for the conclusion that the bonds are void for
want of a proper estimate. . . . The board of di-
rectors are clothed by the statute with a wide discretion
as to the manner in which they shall manage the busi-
ness of the district, and the courts are not warranted
in interfering on any mere question of good business
policy.  Nothing short of a gross abuse of their powers
will warrant such an interference.''

In the case of *Board etc. Quincy Valley Irrigation
Dist. v. Scott,* 79 Wash. 434, 140 Pac. 391, we said:

"The requirement is that the board of directors shall
make the estimate, and when they in good faith make
such an estimate, and their estimate is approved by
the qualified electors of the district, all is done that
is necessary to constitute a compliance with the stat-
ute.''

We therefore conclude that the estimate was sufficient.

(2)   Appellants contend that the bonds negotiated to the Klickitat Irrigation & Power Company in the sum of $222,000 are void because they are ante-dated. Those bonds are dated January 1, 1918, but were not issued and delivered until January 25th of the same year.   The argument is that, because of the ante-dating, the time the bonds are required by statute to run, to wit, twenty years, is shortened by twenty-five days, and that the provision of the statute providing that the bonds must not draw to exceed six per cent interest is violated, because, since the bonds draw interest at six per cent, and since the first semi-annual payment of interest would be for a period less than six months, the interest during that six months would be in excess of six per cent.   Section 6430, Rem. Code, provides that "Every bond of each issue shall be numbered consecutively and bear date at the time of their issuance."   The appellants contend that the bonds were "issued" at the time of delivery, and cite a number of cases to support that theory.   An examination of those cases shows that they are not in point here.   But it is not necessary to discuss them because this question has been before this court in the case of *Yesler v. Seattle,* 1 Wash. 308, 25 Pac. 1014.   That case construed a statute authorizing bonds for municipal internal improvements.   It provided that the bonds should "bear the date of their issue."   The bonds in question were dated July 1, 1890, and were actually delivered after that date.   Discussing the meaning of the word "issue" we said:

"In financial parlance the term 'issue' seems to have two phases of meaning.  'Date of issue,' when applied to notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when

convenience or the state of the market may permit of
their sale or delivery, and we see no reason why the
act of March 26, 1890, should not have that interpreta-
tion. When the bonds are delivered to the purchaser,
they will be 'issued' to him, which is the other meaning
of the term. Usually the question of interest from the
date of issue to the time of sale of bonds is adjusted
by payment of the face and interest by the purchaser,
or the removal of coupons.''

What we said in that case with reference to the stat-
ute there involved is peculiarly applicable to the statute
under discussion here, because this statute expressly
provides that the interest on bonds shall be payable
on the first days of January and July of every year.
If appellants' contention is correct, then the board
of directors would be required, probably at great sacri-
fice, to actually sell and deliver its bonds on either
January 1 or July 1. Manifestly the legislature did
not intend to require such an absurdity. Nor is there
merit in appellants' contention that, because of the so-
called ante-dating, the bonds will draw in excess of
six per cent interest. The testimony shows that, when
they were sold and delivered to the irrigation company,
the accrued interest was adjusted. We cannot con-
clude that there is any irregularity in the issuance
of these bonds because of their being dated on a day
prior to the actual delivery. As bearing upon this
question, see the following cases: *Kinkade v. Witherop,*
29 Wash. 10, 69 Pac. 399; *Smith v. State,* 99 Miss. 859,
56 South. 179, 35 L. R. A. (N. S.) 789; *Rock Creek v.
Strong,* 96 U. S. 271; *Morrill v. Smith County,* 89 Tex.
Sup. 529, 33 S. W. 899; *State ex rel. Hoffman v. Moore,*
46 Neb. 590, 65 N. W. 193; *Syracuse Township v. Rol-
lins,* 104 Fed. 958; *Solon v. Williamsburgh Savings
Bank,* 35 Hun 1; *South St. Paul v. Lamprecht Bros.
Co.,* 88 Fed. 449.

(3)   The appellants further contend that the board
of directors did not have authority to purchase from
the Klickitat Irrigation & Power Company its surveys,
notes, water-rights, etc., and therefore had no authority
to pay for that property by delivering the bonds of
the district. Section 6427, Rem. Code, provides that the
board of directors of any such district shall

"have the power to acquire, either by purchase or
condemnation, or other legal means, the lands, waters,
water rights and other property necessary for the con-
struction, use, supply, maintenance, repair and im-
provement of said canal or canals and irrigation works,
including canals and works constructed or being con-
structed by private owners, or any other person, lands
for reservoirs, for the storage of needful waters, and
all necessary appurtenances.   The board may also con-
struct the necessary dams, reservoirs and works for
the collection of water for said district, and may enter
into contracts for a water supply to be delivered to
the canals and works of the district, and do any and
every lawful act necessary to be done in order to carry
out the purposes of this act; and in carrying out the
aforesaid purposes the bonds of the district may be
used by the board, at not less than 90% of their par
value in payment."

We have no doubt that, under the authority of this
section of the statute, the board was acting well within
its powers when it purchased the property from the
irrigation company and paid bonds therefor.   The Cali-
fornia cases cited by appellants in support of their
contention are not in point.   The California statute, at
the time of the decision of those cases, was much more
limited than the present Washington statute.   The
original irrigation district act of this state was sub-
stantially the same as the California act, but there
have been many amendments to our act with the view
of enlarging the powers of the districts, as well as

overcoming certain objections founded upon the very cases which the appellants have cited.

Whether the board acted with proper discretion and judgment when it made the purchase is not for us to determine. The legislature has vested in it that power and we have no authority to question its judgment, in the absence of arbitrary conduct or fraud. *Hanson v. Kittitas Reclamation Dist., supra.*

(4) The appellants further contend that the bonds show on their face that they are void. This argument is based upon the ground that the bonds contained a provision reading as follows: "Said principal sum and the interest thereon are payable . . . at the office of the county treasurer of Benton county, in the state of Washington, United States of America, or at the option of the holder thereof at the Equitable Trust Company in the city and state of New York." The statute provides that the principal and interest of the bonds "shall be payable at the place designated therein." It is contended that the board of directors exceeded its statutory powers in making the bonds payable at more than one place. The requirements of the statute that the bonds shall be payable at a place designated does not mean that the bonds may not designate more than one place for payment. It is well known that it is the general custom to make bonds payable not only at the place where they are issued, but in the city of New York or other financial center. Such provision, because of its convenience to buyers, greatly enhances the value of the bonds.

But it is further contended that the bonds are invalid for the reason that they are made payable outside of the district which issues them. It is said this violates § 15, art. XI, of the state constitution, which provides that

"All moneys . . . of any . . . public or municipal corporation . . . shall immediately be de-

posited with the treasurer, or other legal depositary, to the credit of city, town or other corporation respectively . . ."

This argument is based upon some California cases. The case of *Yarnell v. Los Angeles,* 87 Cal. 603, 25 Pac. 767, holds that an act of the legislature of California directing city councils to appoint as depositaries of the public moneys, banks offering the highest rate of interest, was in violation of § 16, art. XI of the constitution of that state, which was substantially the same as § 15, art. XI of our constitution. We have had public depositary statutes in this state for many years and they have been before this court. We have not been cited to any case from this court, nor have our researches found one, where such statutes have been declared unconstitutional or their constitutionality questioned. It would not appear, however, that the *Yarnell* case is in point on the question involved here, were it not for the case of *Los Angeles v. Teed,* 112 Cal. 319, 44 Pac. 580, where it was held that an act of the legislature of California authorizing bonds of municipalities to be made payable at a place other than the city treasurer's office (in that instance in the city of New York) was in conflict with the above mentioned constitutional provision. The *Teed* case is based entirely on the reasoning of the *Yarnell* case, *supra.* However interesting it might be to discuss the principles upon which these California cases are based, we do not find it necessary to do so here. If it should be conceded that the board of directors of the district did not have the power to make the bonds payable in New York city, as well as within the district, then the provision with reference to the payment in New York would simply be surplusage and could not have the effect of nullifying the bonds. *Johnson v. Stark County,* 24 Ill. 75; *Sherlock v. Winnetka,* 68 Ill. 530; *Enfield v. Jordan,* 119 U. S. 680;

*Skinker v. Butler County,* 112 Mo. 332, 20 S. W. 613. Bond buyers are charged with notice of the laws of the state granting power to make the bonds. If the officers of the respondent district exceeded their powers in making the bonds payable in New York, the buyers thereof must be held to have known it. They could not enforce a provision which they must know the district had no power to incorporate in the bonds. *Anthony v. Jasper County,* 101 U. S. 693; *Cuddy v. Sturtevant,* 111 Wash. 304, 190 Pac. 909.

We find nothing which would invalidate the bonds. The judgment is affirmed.

HOLCOMB, C. J., TOLMAN, MOUNT, and FULLERTON, JJ., concur.