[Civil No. 2624. Filed April 18, 1927.]

[255 Pac. 481.]

W. W. MITCHELL, Appellant, v. J. O. POWER, R. W. SIMKINS and FRED WILSON, Appellees.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellant.

Messrs. Dougherty & Dougherty, for Appellees.

ROSS, C. J.—The plaintiff and appellant, Mitchell, as the owner of lands in agricultural improvement district No. 3, Maricopa county, Arizona, brought this action against the board of directors of such district, to wit, J. O. Power, R. W. Simkins and Fred Wilson, defendants and appellees, charging that said district was not legally organized, and that its proposed bond issue is void. The relief sought was an adjudication of the legality of the organization of the district and of the bond issue.

The complaint sets out in detail the steps taken in the organization of the district, showing, in general, that an effort was made to conform with the requirements of the Agricultural Improvement District Act (chapter 23, Laws of 1922, Special Session); the act authorizing the organization of improvement districts. The complaint alleges that certain of such steps (sixteen, in fact) were not taken in accordance with the provisions of the Improvement Act, and that the omissions and irregularities were of such a character as to affect the substantial rights of the plaintiff. The complaint also shows that long

before it was filed the board of directors of the improvement district instituted an action in the superior court of Maricopa county, in proper form, to determine the validity of the proceedings for the organization of the district and the validity of its bond issue, and that in said action judgment was made and entered to the effect that the district was regularly and legally organized, and that the bonds were ordered issued in all respects in accordance with the provisions of the Improvement Act. This judgment was made and entered February 16, 1925, and from it no appeal was ever taken. In fact, no interested party appeared to contest the action.

The defendants demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was sustained, and, plaintiff choosing to stand on his complaint, final judgment dismissing it was entered, from which judgment he appeals.

The first sixteen assignments of error raise questions that were directly involved in the confirmatory proceeding, and were actually and necessarily passed upon by the court and decided against the contentions herein urged. The defendants contend that to that extent at least the present suit is a collateral attack upon such confirmatory judgment, and for that reason may not be entertained.

Section 10 of the Improvement Act provides that the organization of an improvement district and the election of its board of directors may be contested by any person owning property within the district, liable to assessments for the purposes of the district, but that such contest must be brought in the proper court within twenty days after the canvass of the vote and the declaration of the result by the board of supervisors. It also provides that either party to any such contest shall have the right of appeal.

Neither the plaintiff nor any other property owner of the district filed any contest under this section. The confirmatory proceedings instituted by the board of directors, and in which the judgment approving the district's organization and the proposed bond issue was entered, were begun and prosecuted under section 45 of said Improvement Act. This section reads as follows:

"The board of directors shall, within thirty days after the entry of the order directing the issue of any bonds herein provided for, bring an action in the superior court of the county wherein is located the office of such board, to determine the validity of any such bonds. Such action shall be in the nature of a proceeding *in rem* and jurisdiction of all parties interested may be had by publication of summons for at least once a week for three weeks in some paper of general circulation in the county where the action is pending, such paper to be designated by the court having jurisdiction of the proceedings. Jurisdiction shall be complete in thirty days after the first publication of such summons in the manner herein provided. Anyone interested may at any time before the expiration of said thirty days, appear and by proper proceedings contest the validity of such bonds. Such action shall be speedily tried and judgment rendered declaring such bonds either valid or invalid. Either party shall have the right to appeal at any time within thirty days after the entry of such judgment, which appeal must be heard and determined within three months from the time of taking such appeal."

The plaintiff ignored the opportunity, given him by section 10, *supra,* to contest the regularity and legality of the proceedings organizing the district, and also the election of the district's managing directors. He paid no attention to the suit brought under section 45. Having failed and neglected to file contest, as he might have done under section 10, or to appear and contest the validity of the bonds

as provided in section 45, he has waived or lost the right to raise the question of the validity of the proceedings organizing the district or the validity of the bond issue by an independent suit such as he has undertaken here, if we give full force and effect to the legislative language as contained in section 46 of the Improvement Act reading as follows:

"The court hearing any contest herein provided for, in inquiring into the regularity, legality, or correctness of such proceedings, must disregard any error, irregularity, or omission which does not affect the substantial rights of the parties to such action or proceeding. The rules of pleading and practice provided by the laws of this state, so far as not inconsistent with the provisions of this Act, shall be applicable to all actions or proceedings herein provided for. No contest of any matter or thing herein provided for shall be made other than within the time and in the manner herein specified."

In view of these provisions of the Improvement Act, the plaintiff, in so far as he attacks the proceedings before the board of supervisors and their actions, orders and directions in the organization of the district, or in the appointment or election of the board of directors, or in the proceedings by the board of directors or the board of supervisors looking to the bond issue, is trying to do something which the law forbids.

"No contest of any matter or thing herein provided for shall be made other than within the time and in the manner herein specified." From section 46, *supra*.

Plaintiff's action is not only a collateral attack upon such proceedings, but seeks in an independent action, at a time and in a manner expressly prohibited, to have an adjudication of questions already determined and adjudicated in another proceeding. This the law will not permit. 3 Kinney on Irrigation

and Water Rights, section 1408 (second edition), says:

"It is therefore generally held that where a reputed irrigation district is acting under the forms of law, unchallenged by the state, the validity of its organization cannot be attacked, either directly or collaterally by a private individual. And, furthermore, it is held that, where proceedings were duly brought, under the confirmation act, to which the state might have made itself a party, and, not having appeared, a judgment validating the proceedings was *res judicata* against it; and therefore even the state itself could not thereafter question the validity of the organization of such district in *quo warranto* proceedings brought in the name of the people of the state by the attorney general."

Improvement districts organized under the Improvement Act have for their general purpose the acquisition of a permanent water supply, as also proper means for drainage, and we can see no reason why the rule announced by Kinney and by the courts generally should not be just as applicable to such improvement districts as to irrigation and drainage districts. All such districts obtain their powers from the state, and cannot be divested of those powers, nor may the right to exercise them be questioned in any manner, or at any time, or by any person, except as prescribed by law.

We are of the opinion that the judgment in the confirmatory action is not open to collateral attack, and, further, that it is *res judicata* as to all the questions raised by plaintiff's first sixteen assignments.

Of course, before the judgment in the confirmation proceeding could be invulnerable to collateral attack or be *res judicata* of the rights of the parties, the court must have had jurisdiction of the subject matter and the parties. The plaintiff suggests several grounds which he contends show that the court

was without jurisdiction to make and enter the confirmation judgment. The only one, however, which appears to us to merit consideration is the one challenging the sufficiency of the summons in that proceeding. The service of summons was in accordance with the terms of the statute (section 45, *supra*), which reads as follows:

"Such action shall be in the nature of a proceeding *in rem* and jurisdiction of all parties interested may be had by publication of summons for at least once a week for three weeks in some paper of general circulation in the county where the action is pending, such paper to be designated by the court having jurisdiction of the proceedings. Jurisdiction shall be complete in thirty days after the first publication of such summons in the manner herein provided."

It is contended that, because the residence of plaintiff and that of other land owners in the improvement district was known, substituted service could not be made to take the place of personal service. There is a line of cases holding that service by publication satisfies due process when it is upon the owners of lands organized into a well known, defined, and an established district. The existence of agricultural improvement district No. 3 and the location of its boundaries were matters of record at the time of the publication of summons, and it is very improbable the owners of lands in said district did not see and fully understand the purpose of said summons. The law required them to take notice of actions affecting the lands in said district. 3 Kinney on Irr. & Water Rights, 2d ed., § 1420, p. 2562; *Fogg* v. *Perris Irr. Dist.*, 154 Cal. 209, 97 Pac. 316; *Crall* v. *Irrigation Dist.*, 87 Cal. 140, 26 Pac. 797, 798; *Modesto Irr. Dist.* v. *Tregea*, 88 Cal. 334, 26 Pac. 237, 238; *Nampa & M. Irr. Dist.* v. *Brose*, 11 Idaho, 474, 83 Pac. 499, 503; *Harney Valley Irr. Dist.* v. *Bolton*, 109 Or. 486, 221 Pac. 171; *In re Sutter-*

*Butte By-Pass Assessment No. 6, etc.,* 191 Cal. 650, 218 Pac. 27, 35.

The complaint charges that certain agreements entered into by and between the officers and agents of the improvement district and the Salt River Valley Water Users' Association, after the judgment of confirmation, modifying or changing agreements theretofore entered into by said parties and approved in the confirmation judgment, were without consideration, and unauthorized by law affecting the legality of the bond issue.

Assignments 17 and 18 are contentions that the demurrer should not have been sustained as to those charges. The original agreement called for a bond issue of $164,000, and was based upon an estimate and determination of the amount of money necessary to be raised to effect the integration of the lands of the improvement district into the Salt River project, with the object of reducing expenses of operation, removing danger of friction and litigation, and securing a unified operation of the irrigation works situated within the Roosevelt reservoir district; and a bond issue for that amount was voted by the improvement district. The modification, of which complaint is made, was made to conform to a subsequent estimate and determination showing the amount of money needed for said purposes was $100,000, and the agreement as modified limited the issue to that amount, and provided for the cancellation of $64,000 of such bonds. If it be granted that the officers of the Water Users' Association exceeded their powers in entering into an agreement to accept $100,000 for integrating improvement district No. 3 into its system of irrigation and drainage, instead of insisting upon $164,000 as theretofore agreed, we cannot see how that would affect the validity of the $100,000 issue. If the improvement district had the right to

agree to give $164,000 for the benefits it was obtaining, and of that the confirmation judgment is conclusive, we can discover no reason why it could not agree to reduce the consideration to $100,000, for the same benefits, and thereby save to its stockholders and members $64,000.

Assignment 19 raises the point that the demurrer was improperly sustained because it appears from the complaint that subsequent to the confirmation judgment the board of supervisors assumed to reduce, and did reduce, the number of directors of the improvement district from five to three, which three (being the defendants) are assuming to act for the improvement district, and propose to order the sale of bonds. It is contended that the order of the board of supervisors purporting to reduce the number of directors was void, and that such directors have no legal power or authority to represent the improvement district. The material facts in this connection, as disclosed by the complaint, are that the petition to the board of supervisors to establish the improvement district requested that provision be made for the election of three directors at large, as the petitioners had a right to do under section 5 of the Improvement Act. It seems that this request was ignored by the board of supervisors, and an order was entered that five directors at large be elected. Under section 5, *supra,* the request having been made for three directors at large, the power of the board of supervisors was limited to the granting of that request. The order of the board of supervisors now complained of was an effort to make their records recite the only legal order that they could have made originally, and it appears that the three defendants are the properly elected, commissioned, and acting directors of said improvement district. What the situation was before the confirmation judgment became final we are not concerned with. The

present situation presents three *de jure* offices, filled by three *de jure* officers.

Finally, error is assigned, in the court's order sustaining the demurrer, "for the reason that it appears upon the face of the complaint that the defendants are proposing to issue bonds at the present time, which bonds are dated February 28, 1925, and which are to mature on the first day of January in the years 1937 to 1950, both inclusive, in violation of the provision of the Agricultural Improvement District Act which provides that said bonds shall be dated at the time of their issue, and in violation of the provision of said Agricultural Improvement District Act that none of the bonds shall be payable until after the expiration of eleven years from the date of the bonds."

Section 26 of the Improvement Act requires that bonds issued thereunder "shall . . . bear date at the time of their issue," and provides that none of them shall be payable until after the expiration of eleven years from their date. It will be seen from the assignment that the contention is that bonds are issued when sold and not before; and, if that be the law, clearly they would have to be redated in order to comply with the requirement that none of them shall be payable before eleven years from date. If, however, the date the bonds bear is "the time of their issue," the maturity date, as shown by the assignment, is taken beyond the period of eleven years. We think the rule with reference to bonds of this kind is that the time of issue may be treated as the date of the bond. The following cases have announced that rule: *Stowell* v. *Rialto Irr. Dist.*, 155 Cal. 215, 100 Pac. 248; *Board of Directors* v. *Mineah*, 112 Wash. 325, 192 Pac. 997; *Yesler* v. *Seattle*, 1 Wash. 308, 322, 25 Pac. 1014, 1019. In the last case the court said:

"The statute requires that such bonds shall 'bear the date of their issue,' and it has become a question in this case what the date of issue is, since the bonds were prepared with the date of July 1, 1890, . . . In financial parlance the term 'issue' seems to have two phases of meaning. 'Date of issue,' when applied to notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery, and we see no reason why the act of March 26, 1890, should not have that interpretation. When the bonds are delivered to the purchaser, they will be 'issued' to him, which is the other meaning of the term. Usually the question of interest from the date of issue to the time of sale of bonds is adjusted by payment of the face and interest by the purchaser, or the removal of coupons."

Being satisfied that the confirmatory proceedings and the judgment therein were conclusive of the regularity and legality of the organization of agricultural improvement district No. 3, and of the action of its officers and of the board of supervisors looking to the bond issue, and that what has occurred subsequent to such judgment cannot adversely affect any substantial rights of the plaintiff and others similarly situated, we hold the demurrer to the complaint was properly sustained.

The judgment dismissing the complaint is affirmed.

LOCKWOOD and McALISTER, JJ., concur.